34                    January 4, 2024                 No. 4

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

FRANCISCO JAVIER HERNANDEZ-ESTEBAN,
*Defendant-Appellant.*

Washington County Circuit Court
19CR60141; A177043

Ricardo J. Menchaca, Judge.

Submitted September 26, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Mary M. Reese, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kirsten M. Naito, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Remanded for resentencing; otherwise affirmed.

**AOYAGI, P. J.**

Defendant was convicted of sexual abuse of two children, A and M. On appeal, he raises three assignments of error. First, he argues that the trial court erred in denying his pretrial motion to sever the charges involving M (Counts 1 and 2) from the charges involving A (Counts 3 to 12) for purposes of trial. Second, he contends that the trial court erred in admitting A's out-of-court statements under the hearsay exception in OEC 803(18a)(b). Third, as to Count 1, on which he was convicted of first-degree sexual abuse for giving M what she described as a peck on the lips, he challenges his 75-month prison sentence as so disproportionate that it violates Article 1, section 16, of the Oregon Constitution. For the following reasons, we remand for resentencing on Count 1, and we otherwise affirm.

## I.   FACTS

In 2021, defendant was charged in a single indictment with 12 counts of child sexual abuse. He was charged with eight counts of first-degree sexual abuse, ORS 163.427 (Counts 3 to 10), and two counts of third-degree sexual abuse, ORS 163.415 (Counts 11 and 12), for allegedly touching the vagina of his ex-girlfriend's daughter, A, on 10 separate occasions between 2014 and 2018, while A was approximately 11 to 15 years old and was living in an apartment with her family and defendant. Defendant was also charged with two counts of first-degree sexual abuse, ORS 163.427, for alleged conduct toward M—a younger cousin of A, who sometimes visited A's apartment—specifically "touching [M's] lips or mouth" (Count 1) and "touching [M's] buttocks" (Count 2) on separate occasions in 2016, when M was eight or nine years old.

The charges were tried together, after defendant unsuccessfully moved to sever. The jury found defendant not guilty on Count 2, resulting in his acquittal on that charge, and found him guilty on Count 1 and Counts 3 to 12, resulting in his conviction on those charges. At sentencing, the trial court imposed a combination of concurrent and consecutive sentences. Defendant was sentenced to a total of 180 months (15 years) in prison for his crimes against A, and he was

sentenced to 75 months (six years, three months) in prison for his crime against M.

## II.   MOTION TO SEVER

In his first assignment of error, defendant argues that the trial court erred when it denied his pretrial motion to sever the charges pursuant to ORS 132.560(3) so that Counts 1 and 2, involving M, would be tried separately from Counts 3 to 12, involving A. Defendant argues that trying the charges together substantially prejudiced him by "depriving him of the protection of those provisions of the Oregon Evidence Code which limit the use of propensity evidence" and that it "rendered defendant's trial fundamentally unfair in violation of due process." He seeks reversal of his conviction on Count 1 on that basis; as previously noted, he was acquitted on Count 2.[1]

Multiple offenses may be charged in a single indictment if, as relevant here, the offenses "are alleged to have been committed by the same person" and are "[o]f the same or similar character[.]" ORS 132.560(1)(b)(A). However, "[i]f it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under subsection (1) * * *, the court may order an election or separate trials of counts or provide whatever other relief justice requires." ORS 132.560(3).

The Supreme Court recently revisited the law on severance in *State v. Delaney*, 370 Or 554, 522 P3d 855 (2022), which involved a trial of joined charges arising from the defendant's alleged sexual assaults of two different women two years apart. The court reaffirmed that "whether the joinder of multiple charges substantially prejudices a party is a question of law" that is reviewed on appeal for legal error. *Id*. at 561. The court also reaffirmed that "a defendant seeking severance under ORS 132.560(3) must identify a case-specific theory of substantial prejudice that is more than the prejudice that is inherent whenever joined

---

[1] In defendant's view, the jury's consideration of the charges involving A had an improper effect on its verdict on Count 1. He does not contend that the jury's consideration of the charges involving M had an improper effect on its verdicts on Counts 3 to 12. He therefore seeks reversal only on Count 1 based on the denial of severance.

charges allow the jury to hear that the defendant may have committed other bad acts." *Id*. at 556.

Although defendant tried to identify a case-specific theory of substantial prejudice in his motion to sever, we agree with the state that he ultimately failed to identify any substantial prejudice that went beyond the prejudice inherent in the joinder of separate charges for similar offenses involving different victims.[2] *See, e.g.*, *Delaney*, 370 Or at 556 (affirming denial of severance in case where the defendant was charged with sexually assaulting two different women); *State v. Buyes*, 280 Or App 564, 570-71, 382 P3d 562 (2016) (affirming denial of severance in case where the defendant was charged with multiple sex crimes against two children); *State v. Crummett*, 274 Or App 618, 622-23, 361 P3d 644 (2015), *rev den*, 359 Or 525 (2016) (affirming denial of severance in case where the defendant was charged with 42 sex crimes against six children); *State v. Williams*, 272 Or App 770, 772, 358 P3d 299 (2015), *rev den*, 358 Or 611, *cert den*, 579 US 907 (2016) (affirming denial of severance in case where the defendant "was charged with sex crimes against different victims, in different locations, with distinct factual scenarios, that were separated by several months"); *State v. Gensler*, 266 Or App 1, 9, 337 P3d 890 (2014), *rev den*, 356 Or 690 (2015) (affirming denial of severance in case where the defendant was charged with multiple sex crimes against two family members). The trial court did not err in denying the motion to sever.

## III.  HEARSAY EXCEPTION

In his second assignment of error, defendant contends that the trial court erroneously admitted hearsay statements of A under OEC 803(18a)(b). Hearsay is generally inadmissible. OEC 802. However, there are exceptions, including, as relevant here, an exception for a child declarant's out-of-court statements regarding sexual abuse, if the declarant "testifies at the proceeding and is subject to cross-examination." OEC 803(18a)(b). The trial court admitted

---

[2] To the extent that defendant argues that, even if he was not substantially prejudiced, the prejudice inherent in the joinder of separate offenses was sufficient to deprive him of a fair trial in violation of due process, we also reject that argument.

into evidence, over defendant's objection, out-of-court statements made by A when she was a child. Defendant argues that it was error to admit those statements under OEC 803(18a)(b) because, by the time that she testified at defendant's trial, A was 18 years old.

We recently held in *State v. Juarez-Hernandez*, 316 Or App 741, 754, 503 P3d 487, *rev den*, 369 Or 856 (2022), that it is the declarant's age at the time that the out-of-court statements were made that is determinative of their admissibility under OEC 803(18a)(b), not the declarant's age at the time of the trial in which the statements are offered into evidence. Defendant asserts that *Juarez-Hernandez* was wrongly decided. We are unpersuaded. Because *Juarez-Hernandez* is controlling, we reject defendant's claim of error regarding the admission of A's out-of-court statements as a child.

## IV.    SENTENCE ON COUNT 1

In his third assignment of error, defendant challenges his sentence on Count 1 as so disproportionate to the offense that it violates Article I, section 16. *See* Or Const, Art I, § 16 ("Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."). The basic principle underlying the proportionality requirement is that "'a greater or more severe penalty should be imposed for a greater or more severe offense, and, conversely, that a less severe penalty should be imposed for a less severe offense.'" *State v. Rodriguez/Buck*, 347 Or 46, 59, 217 P3d 659 (2009) (quoting *State v. Wheeler*, 343 Or 652, 655-56, 175 P3d 438 (2007) (emphasis omitted)). "We review for legal error the trial court's conclusion that defendant's sentence was constitutional under Article I, section 16." *State v. Ryan*, 361 Or 602, 614-15, 396 P3d 867 (2017).

Under ORS 163.427(1)(a)(A), a person commits the crime of first-degree sexual abuse "when that person *** [s]ubjects another person to sexual contact and *** [t]he victim is less than 14 years of age[.]" "Sexual contact" is defined to include "any touching of the sexual or other intimate parts of a person *** for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(5). Here, Count 1 of the indictment charged defendant with committing

first-degree sexual abuse by knowingly subjecting M "to sexual contact by touching her lips or mouth, an intimate part of [M]."

At trial, M testified that, in 2016, she would often visit her grandmother, aunt, and cousins in their apartment that they shared with defendant (who was in a relationship with M's aunt). During one visit, M's cousin took defendant's phone, ran around the kitchen with it, then gave it to M. Defendant approached M, who was on the couch, and briefly kissed her on the lips. It surprised M, because an older man had never kissed her, and she did not have "that kind of relationship with [defendant]." Nothing further happened. M would have been eight or nine years old. M disclosed the kiss to her cousin in 2018 and to a teacher in 2019. In a 2019 CARES interview, M said that defendant kissed her—she described it as a "peck" on the lips—and that she pushed him away. At trial, M again described the kiss as a "peck" on the lips.[3] There is no evidence that defendant improperly touched M on any other occasion, excluding the allegation on which the jury found him not guilty.[4]

Based on the foregoing evidence, the jury found defendant guilty of first-degree sexual abuse of M. The court sentenced defendant to 75 months in prison—the mandatory minimum sentence for first-degree sexual abuse, ORS 137.700(2)(a)(Q)—to run consecutively to his sentences for the crimes involving A. The court rejected defendant's proportionality challenge, citing "two separate victims, the

_____

[3] Defendant did not testify, and no one else witnessed the kiss, so M's description is the only evidence of what happened. We emphasize that M consistently described the kiss as a "peck" because, under existing case law, the duration and intensity of the contact is legally significant. *See Rodriguez/Buck*, 347 Or at 70 ("In determining whether the penalty here is unconstitutionally disproportionate, we cannot ignore the limited extent of the offenses—the physical touching—at issue here. There is no evidence that any touching between Rodriguez and the boy involved fondling, stroking, rubbing, or palpating. And the trial court, sitting as the factfinder in *Buck*, found that his contact with the girl did not involve fondling and was 'minimal.' The touchings were brief, if not momentary.").

[4] M testified that, on two or three occasions in 2017—that is, the year after the charged incident—defendant told her "to get up on him," and she ran out of the room. It is unknown whether the jury found that testimony credible. In any event, the trial court does not appear to have relied on it for the proportionality analysis, nor do we. *See* 330 Or App at 51-52 (distinguishing between wrongful conduct that could be charged as a crime and wrongful conduct in a broader sense).

repeated ongoing conduct, and vulnerable victims." We now consider the proportionality issue on appeal.

A.   *Legal Standard*

Article I, section 16, provides that "[c]ruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense." Or Const, Art 1, § 16. Over 100 years ago in *Sustar v. County Court for Marion Co.*, 101 Or 657, 665, 201 P 445 (1921), the Supreme Court stated, "In order to justify the court in declaring punishment cruel and unusual with reference to its duration, the punishment must be so proportioned to the offense committed as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances." The same standard applies to proportionality challenges. *Rodriguez/Buck*, 347 Or at 57 ("Although the decision in *Sustar* referred to the cruel and unusual punishment clause of Article I, section 16, rather than the proportionality clause, in later cases this court has made it clear that the 'shock the moral sense' standard also applies to proportionality challenges.").

The "shock the moral sense" test articulated in *Sustar* "was not intended to be taken literally—'that is, that a penalty for a particular crime would meet the proportionality requirement if a single "reasonable person" could be found whose moral sense was not "shocked" by that penalty.'" *Rodriguez/Buck*, 347 Or at 57-58 (quoting *Wheeler*, 343 Or at 670). Rather, it is meant to emphasize that courts have a limited role in reviewing criminal penalties authorized by the legislature. *Id.* at 58. Courts should "'find a penalty to be disproportionately severe for a particular offense only in rare circumstances.'" *Id.* (quoting *Wheeler*, 343 Or at 652). That is because the legislature has a "central role" in establishing penalties, and it is not the role of the court "to second-guess the legislature's determination of the penalty or range of penalties for a crime." *Id.* "A sentence may be harsh without being unconstitutionally disproportionate[.]" *State v. Lara-Vasquez*, 310 Or App 99, 110, 484 P3d 369, *rev den*, 368 Or 561 (2021).

At the same time, "it is the role of the court to ensure that sentences conform to requirements that have been in our constitution for 150 years[,]" which sometimes

means recognizing that a sentence is unconstitutionally disproportionate. *Rodriguez/Buck*, 347 Or at 58. For example, in *Rodriguez/Buck*, with respect to two different defendants, the Supreme Court held that imposing the mandatory minimum 75-month prison sentence for first-degree sexual abuse "would violate the constitutional requirement that the penalty be proportioned to the offense." *Id*. at 50. One of the defendants, Rodriguez, had committed first-degree sexual abuse by bringing a 13-year-old boy's head into contact with her clothed breasts for about one minute. *Id*. at 49. The other defendant, Buck, had committed first-degree sexual abuse by maintaining hand contact with a 13-year-old girl's clothed buttocks two or three times while she was fishing and then brushing dirt off the back of her shorts with two swipes of his hand. *Id*.

To determine whether a criminal penalty "is so disproportionate, when compared to the offense, so as to 'shock the moral sense' of reasonable people," we are to consider "at least three factors": (1) the severity of the penalty compared to the gravity of the crime; (2) the comparative penalties imposed for other, related crimes; and (3) the defendant's criminal history. *Id*. at 58.

B.  *Severity of the Penalty Compared to Gravity of the Crime (First Factor)*

We begin with the severity of the penalty compared to the gravity of the crime, which requires us to "assess the gravity of the crime by examining the description of the conduct prohibited by the statute under which defendant was convicted, including the range of conduct prohibited by the statute, and then examine the facts of defendant's case to assess where defendant's conduct fits within that range." *State v. Gonzalez*, 326 Or App 587, 602, 534 P3d 289, *rev allowed*, 371 Or 715 (2023). "For purposes of Article I, section 16, where a statute criminalizes a broad range of conduct and the defendant's conduct is on the less-egregious end of the range, then defendant's crime is treated as less grave for purposes of proportionality assessment." *Id*. at 602-03. Meanwhile, the severity of a prison sentence "is measured primarily by its length." *Id*. at 603.

As the Supreme Court has recognized, the crime of first-degree sexual abuse covers a "wide swath of conduct when the victim is less than 14 years, including, but not limited to, momentary touching of an intimate part without the victim's awareness or knowledge, touching that the victim apprehends but does not appreciate as sexual, momentary touching over clothing, prolonged hand to genital contact, prolonged skin to skin genital contact, and, of course, forcing a person under 18 to engage in bestiality." *Rodriquez/Buck*, 347 Or at 69 (internal quotation marks omitted).

Here, defendant kissed M in a manner that she described as a peck on the lips, while she was in the common area of an apartment where at least one other person was present. Although any sexually motivated act against a child is inappropriate, that is among the least egregious acts that constitute first-degree sexual abuse.[5] The state argues that a kiss is "more severe" sexual abuse than the touching of clothed breasts and clothed buttocks at issue in *Rodriquez/Buck*, because a kiss involves "skin to skin" contact. However, that comparison is inapt. When a body part is normally kept covered as an especially private part of the body—as is the case with breasts and buttocks—touching that body part under the clothes or without clothes is more invasive, and thus graver conduct, than touching the same body part over clothes. *See, e.g.*, *State v. Camacho-Garcia*, 268 Or App 75, 82-83, 341 P3d 888 (2014), *rev den*, 357 Or 164 (2015) (describing the defendant's "skin-to-skin" touching of the victim's breasts under her clothing as "more invasive" than the touching of clothed breasts in *Rodriguez/Buck*). The same comparison cannot be made as to body parts that are not normally kept covered.

We are unpersuaded that a "peck" on the lips is "more severe" sexual abuse than the acts at issue in *Rodriquez/Buck*. Like the conduct in *Rodriguez/Buck*, it "is at the outer edge of 'sexual contact' as that term is defined" in ORS 163.305. *Rodriquez/Buck*, 347 Or at 75; *see also State v. Carey-Martin*, 293 Or App 611, 638, 430 P3d 98 (2018)

---

[5] We assume for purposes of our analysis that defendant's conduct qualifies as first-degree sexual abuse, *i.e.*, that a peck on the lips meets the definition of "sexual contact" in ORS 163.305(5). The only issue before us is defendant's sentence.

(considering the three *Rodriguez/Buck* factors in holding that a 25-year prison sentence for "sexting" conduct violated Article I, section 16, including recognizing that the defendant's conduct fell "toward the less serious range of conduct" covered by the relevant statute, even if it "does not fall at that very outer edge of prohibited contact").

It should be noted that other case-specific circumstances that sometimes increase the gravity of an offense above its baseline gravity—and that we often discuss only when present—are not present here. *See Rodriguez/Buck*, 347 Or at 62 (allowing for consideration of "case-specific factors, such as characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim"). Defendant was dating M's aunt, so he was not a stranger to M, but neither was he in a relationship of trust with her, such as a close family member, teacher, or religious figure might be. *See, e.g.*, *State v. Buckendahl*, 308 Or App 125, 130, 480 P3d 325 (2020), *rev den*, 368 Or 37 (2021) (the defendant was the victim's teacher); *State v. Padilla*, 277 Or App 440, 446, 371 P3d 1242, *rev den*, 360 Or 401 (2016) (the defendant was "a long-time family friend whom [the victim] had known since she was a very young child"); *Camacho-Garcia*, 268 Or App at 82-83 (the defendant "was the victim's *de facto* step-father," which was "a trust relationship," so his conduct was "more likely to be psychologically damaging"). There was no evidence that M was unusually vulnerable, relative to other children less than 12 years old.[6] *See, e.g.*, *State v. Horseman*, 294 Or App 398, 411, 432 P3d 258 (2018), *rev den*, 364 Or 723 (2019) (the victim was a teenager with a drug and alcohol problem who the defendant met at a café serving homeless people); *State v. Alwinger*, 236 Or App 240, 246, 236 P3d 755 (2010) (the crime was graver where the "conduct was aimed at a particularly vulnerable victim"). There also was no evidence of an unusual degree of harm. *See, e.g.*, *State v. Sokell*, 360 Or 392, 397, 380 P3d

---

[6] The trial court referred to both victims as "vulnerable," but it appears to have meant only that A and M were children and thus inherently more vulnerable than an adult. All of defendant's convictions, including Count 1, included the victim's age as an element of the offense. At least in these circumstances, some additional vulnerability specific to M, beyond that inherent in the offense, would be needed to increase the gravity of the offense above its inherent gravity.

975 (2016) (the victim suffered "severe trauma that affected her school and home life for years").

For all of those reasons, as in *Rodriguez/Buck*, "a comparison of the penalty and the offense indicates that the 75-month Measure 11 sentence may be so disproportionate to [the offense] as to violate Article I, section 16." *Rodriguez/Buck*, 347 Or at 74 (stating further, "Not only does defendants' criminal conduct appear insufficiently grave to justify the mandatory six-year and three-month sentence, but it also is less severe than the conduct in the vast majority of (and probably in all) other reported first-degree sexual abuse cases since Measure 11 was passed").

C.   *Comparative Penalties for Other, Related Crimes (Second Factor)*

We next compare penalties imposed for other, related crimes. It is true, as defendant points out, that the same 75-month mandatory minimum prison sentence applies to much more severe conduct involving children only a few years older than M was, including vaginal intercourse with a child aged 12 or 13 years old, ORS 163.365 (second-degree rape); oral or anal intercourse with a child aged 12 or 13 years old, ORS 163.395 (second-degree sodomy); or using an object to penetrate the vagina, anus, or penis of a child aged 12 or 13 years old, ORS 163.408 (second-degree unlawful sexual penetration). *See* ORS 137.700(2)(a)(L), (N), (P) (setting mandatory minimum prison sentence of 75 months for those crimes). However, that comparison is undercut by the fact that those crimes rise from second-degree to first-degree when committed against a child under 12 years old and then carry a 100-month mandatory minimum prison sentence. *See* ORS 163.375 (first-degree rape); ORS 163.405 (first-degree sodomy); ORS 163.411 (first-degree unlawful sexual penetration); ORS 137.700(2)(a)(K), (M), (O) (setting mandatory minimum prison sentence of 100 months for those crimes).

In other words, first-degree sexual abuse of a child under 12 years old is subject to a lesser penalty (75 months in prison) than the more severe crimes of first-degree rape, first-degree sodomy, or first-degree unlawful sexual

penetration of a child under 12 years old (100 months in prison). To the extent that the 25-month differential seems disproportionately small, that has more to do with a brief kiss on the lips falling at the outer edge of what constitutes first-degree sexual abuse than it does with any inherent disproportionality in the penalties attached to different, related crimes. Ultimately, the second *Rodriguez/Buck* factor is neutral.

D.   *Defendant's Criminal History (Third Factor)*

The third *Rodriguez/Buck* factor is "criminal history," which proves to be the most complicated to address. Until his trial in this case, defendant had no convictions for any crime of any type. If that were the end of the analysis on the third factor, this case would fall squarely within the purview of *Rodriquez/Buck*, and we would readily conclude that a 75-month prison sentence for giving an eight- or nine-year old child a single "peck" on the lips violates the proportionality clause of Article I, section 16. What complicates matters is defendant's sexual abuse of A from 2014 to 2018, which resulted in 10 convictions in the same trial. The state argues that defendant's "sexual abuse of [A]—although not strictly a prior conviction—is part of defendant's history" and demonstrates "a pattern of abuse against young girls."

With the possible exception of *Horseman*—a case that we will discuss later—this appears to be the first time that we have been faced with a case in which the criminal history factor is dispositive as to whether the penalty for the crime is unconstitutionally disproportionate. That reality requires us to take an unusually close look at the criminal history factor and its role in the disproportionality analysis.

The Supreme Court has explained that consideration of a defendant's "criminal history" as part of the proportionality analysis under Article I, section 16, is "rooted in Blackstone's influential writings on proportionality":

"The idea that a penalty that might be proportional as applied to one who has previously committed the same or other crimes but not proportional as applied to a first-time offender is rooted in Blackstone's influential writings on proportionality. Blackstone, who urged more rational,

> proportional sentences, argued that different standards
> should apply to repeat offenders. 4 William Blackstone,
> *Commentaries on the Laws of England* 12, 15-16 (1769)."

*Rodriguez/Buck*, 347 Or at 65-66. Given Blackstone's emphasis on the deterrent effect of criminal punishment, it seems likely that Blackstone was referring to people with prior convictions for similar offenses when he discussed repeat offenders. *See* 4 William Blackstone, *Commentaries on the Laws of England* 11 (1769) (asserting that the purpose of punishment is to deter future offenses of the same kind).

A defendant's prior convictions have proven particularly significant to the proportionality analysis under Article I, section 16, in cases involving repeat-offender or habitual-offender sentencing statutes. The first and third *Rodriguez/Buck* factors "'overlap' when determining proportionality under a recidivism statute." *Carey-Martin*, 293 Or App at 618-19 (quoting *State v. Althouse*, 359 Or 668, 685, 375 P3d 475 (2016)). Thus, "what matters in determining the constitutionality of a repeat-offender sentence is the gravity of a defendant's criminal history." *Althouse*, 359 Or at 689.

In *State v. Smith*, 128 Or 515, 273 P 323 (1929), the defendant, who had three prior felony convictions for property crimes, was given a life sentence for receiving stolen property, under a habitual-offender statute. In concluding that the sentence was proportionate, the court explained that "it does no violence to any constitutional [guarantee] for the state to rid itself of depravity when its efforts to reform have failed." *Id*. at 525 (internal quotation marks omitted). The defendant was "an incorrigible criminal, a man who has heretofore been convicted at least four times for burglariously preying upon the property and safety of others." *Id*. at 525-26. Although the court would have been "astounded" by the severity of the sentence if it was his first offense, his multiple prior felony convictions led the court to conclude that "the sentence imposed in this case can but be deemed a just one." *Id*. at 526.

Similarly, in *Jensen v. Gladden*, 231 Or 141, 372 P2d 183 (1962), the defendant was convicted of a sex crime and sentenced to an indeterminate life sentence, under a statute applicable to defendants with prior convictions for

sex crimes. The court explained that whether such a sentence would "shock the moral sense" would "depend upon the seriousness of repetitive sexual conduct of this kind and the danger that it forecasts for others unless the defendant is segregated from society." *Id*. at 144-45.

In *Wheeler*, the court stated explicitly in the context of a recidivist statute that the proportionality provision of Article I, section 16, "permits the imposition of penalties for repeat offenders that might not be permissible for a single offense." 343 Or at 671. "An enhanced sentence (even a life sentence) is appropriate, and not disproportionate, when a defendant is 'an incorrigible criminal.'" *Id*. at 673. The defendant in *Wheeler* had two prior convictions for felony sex offenses, was convicted of new felony sex offenses, and was sentenced to life imprisonment under a recidivist statute. *Id*. at 654.

In *Althouse*, 359 Or at 670, the court upheld a sentence of life imprisonment without the possibility of parole for felony public indecency, where the defendant had three prior convictions for qualifying sex offenses. By contrast, in *State v. Davidson*, 360 Or 370, 372, 380 P3d 963 (2016), the court overturned sentences of life imprisonment without the possibility of parole for two counts of felony public indecency, even though the defendant had not been deterred by prior sentences, where his criminal history was extensive but less severe than the defendant's in *Althouse*.

*Smith*, *Jensen*, *Wheeler*, and *Althouse* all involved defendants who, by application of a repeat-offender statute, were given a more severe sentence for the current offense due to having prior convictions for similar offenses. It is not only the legislature, however, that may determine that a defendant's criminal history warrants imposing more severe punishment for an offense. Even without legislative direction, a trial court may impose a more severe sentence on someone whose prior criminal history suggests incorrigibility or who is unlikely to be dissuaded from future criminal activity without a heavier punishment. Indeed, for offenses not subject to Measure 11, there is a specific mechanism to do so, which is through consideration of the aggravating factors of "persistent involvement in similar offenses" and "failure to

deter." OAR 213-008-0002 (aggravating sentencing factors); *State v. Lennon*, 348 Or 148, 157, 229 P3d 589 (2010) (discussing "failure to deter" factor); *State v. Williams*, 238 Or App 9, 14-15, 241 P3d 1170 (2010), *rev den*, 349 Or 603 (2011) (applying "persistent involvement in similar offenses" and "failure to deter"). Post-Measure 11, criminal history is considered in sex crime sentencing primarily in the context of constitutional proportionality challenges to a mandatory sentence.[7]

For example, in *State v. Sills*, 260 Or App 384, 399-400, 317 P3d 307 (2013), *rev den*, 355 Or 380 (2014), we considered the defendant's prior convictions for grabbing the buttocks of a 16-year-old girl and for fondling the vaginal area of a four-year-old girl, in concluding that his 75-month sentence for first-degree sexual abuse was proportionate. In *Alwinger*, 236 Or App at 247, we considered the defendant's two prior convictions "for burglary, which is a serious crime," in rejecting his challenge to a 300-month sentence for a sex crime; noting that *Rodriguez/Buck* did not limit criminal-history consideration "to the same or similar offense," we reasoned that the "previously imposed sentences did not prevent [the defendant] from engaging in criminal behavior, and, for that reason, his lengthy prison term is more proportionate than it might be for a defendant with no criminal history whatsoever." In *State v. Wiese*, 238 Or App 426, 429, 241 P3d 1210 (2010), *rev den*, 349 Or 654 (2011), we considered the fact that the defendant had two prior convictions for "serious" crimes, robbery and assault, "and his punishment for those serious crimes did not deter him from engaging in criminal behavior."[8]

---

[7] Under the sentencing grid, the presumptive sentence for first-degree sexual abuse would be 16 to 18 months in prison, subject to upward or downward departure, whereas, under Measure 11, the mandatory sentence is 75 months in prison, which is both the minimum and maximum sentence—except that if the person has two other felony sex convictions, the presumptive sentence is lifetime imprisonment under ORS 137.719. *Rodriguez/Buck*, 347 Or at 73 & n 16.

[8] At the other end of the spectrum are defendants with no "criminal history" under any possible definition of that term, *i.e.*, no other convictions (prior or otherwise), no pending charges, no arrests, no police contact, and no evidence of uncharged acts. It is unclear whether a lack of criminal history on its own would ever be enough to establish disproportionality. *Compare Smith*, 128 Or at 525 (a life sentence imposed for a property crime would have "astounded" the court if the defendant were a first-time offender, but was proportionate where he was "an incorrigible criminal"), *with State v. Shaw*, 233 Or App 427, 439, 225 P3d 855, *rev den*, 348 Or 415 (2010) ("Although criminal history is one factor that

As the foregoing cases illustrate, when a reason is given for considering a defendant's prior convictions in a constitutional proportionality analysis, it is invariably that the sentences imposed in the past failed to deter further criminal activity. As the court put it in *Rodriguez/Buck*, 347 Or at 77, "a defendant who previously has been convicted of and served sentences for other crimes has demonstrated, by committing additional crimes, that the previously imposed sentences were insufficient to prevent the defendant from returning to his or her criminal behavior." *See also, e.g.*, *Lara-Vasquez*, 310 Or App at 109 ("Prior criminal convictions may demonstrate that previously imposed sentences have not deterred a defendant from returning to criminal behavior."); *State v. Delp*, 297 Or App 1, 12, 13, 441 P3d 590, *rev den*, 365 Or 195 (2019) (the defendant had a long history of exploitive and predatory behavior, "lesser criminal sanctions ha[d] not deterred him," and he committed the current offenses "within months after being released from custody after serving a lengthy prison sentence for the same offenses").

Unlike the defendants in the cases discussed thus far, however, defendant does not have any *prior convictions*. That is, at the time of trial, he had never been convicted of any crime and therefore, necessarily, had never served a sentence that failed to deter him from future criminal activity. What defendant does have is 10 other convictions in the same case against a different victim, A. There is also evidence of additional uncharged conduct against A, in that

---

could, along with the other factors, demonstrate that a penalty is disproportionate under the circumstances, the lack of prior convictions alone has never been sufficient to render an otherwise constitutional penalty disproportionate under Article I, section 16."). In practice, a defendant's total lack of criminal history tends to be relevant only when the other factors favor disproportionality. *See, e.g.*, *State v. Le*, 327 Or App 129, 142, 534 P3d 1097, *rev den*, 371 Or 715 (2023) (giving the defendant's lack of criminal history "little weight" relative to the other *Rodriguez/Buck* factors); *Gonzalez*, 326 Or App at 604 (the defendant's lack of criminal history did not make her sentence disproportionate, given other considerations); *State v. Bentley*, 301 Or App 347, 357, 456 P3d 651 (2019) (the defendant's lack of criminal history did not make his otherwise proportionate sentence disproportionate); *Padilla*, 277 Or App at 447 (where the defendant "committed a grave and invasive act of sexual abuse against an 11-year-old child[,]" his lack of criminal history did not make the sentence disproportionate); *State v. Johnson*, 244 Or App 574, 585, 260 P3d 782 (2011) (even though the defendant had no criminal history, his sentence was proportionate given the nature of his crime).

A testified that defendant engaged in the same conduct—touching her vagina at night while she was in bed—many more times than the 10 times for which he was convicted in Counts 3 to 12.

Existing proportionality case law is silent as to the relevance of other convictions in the same case to the "criminal history" factor. By contrast, there is case law on uncharged conduct, so we begin there.

With respect to uncharged conduct, in discussing the "criminal history" factor in *Rodriguez/Buck*, the Supreme Court stated, "Traditional understandings of proportionality, as well as this court's cases, require us to consider whether a defendant is a repeat offender by considering *previous criminal convictions* and whether there is *evidence of multiple instances of uncharged wrongful conduct*." 347 Or at 78 (emphases added). As to uncharged conduct, it is not entirely clear what the court meant by "traditional understandings." We have been unable to find anything regarding uncharged conduct in the Blackstone treatise cited in *Rodriguez/Buck* or any prior Oregon appellate decisions that meaningfully discuss uncharged conduct. As then Chief Justice De Muniz pointed out in his separate opinion in *Rodriguez/Buck*, the cases cited by the majority—*Smith*, *Jensen*, and *Wheeler*—all involved recidivist statutes. *Id.* at 91 n 2 (De Muniz, C. J., concurring in part, dissenting in part). Recidivist statutes necessarily require prior convictions, or at least we are unaware of any that consider uncharged conduct.[9]

Notably, in his separate opinion, Chief Justice De Muniz expressed concern that considering a defendant's criminal history in sentencing outside the context of a true recidivist statute raises "all manner of issues" and "will lead

---

[9] We note that ORS 137.690, which provides for a 25-year mandatory minimum prison sentence for any person convicted of a major felony sex crime "who has one (or more) previous conviction of a major felony sex crime," includes convictions in the same proceeding—and therefore is not a traditional recidivist statute—but still requires actual convictions. *Horseman*, 294 Or App at 408 ("ORS 137.690 cannot be considered a recidivism statute in the traditional sense because, although it applies only when a defendant has multiple convictions for 'major felony sex crimes,' it allows a previous conviction to be the predicate conviction even if it is imposed in the same sentencing proceeding." (Internal quotation marks omitted.)).

to inconsistent results." *Id.* at 91. Regarding uncharged conduct, we understand "all manner of issues" to refer to the fact that the state has never proved the conduct, let alone proved it to a jury. It may also refer to the possibility of excessive punishment, if a more severe sentence is imposed on the current offense based on evidence of uncharged conduct and, later, the defendant is convicted and sentenced for the previously uncharged conduct.

The *Rodriguez/Buck* majority was obviously aware of Chief Justice De Muniz's concerns and implicitly rejected them—at least to some degree—when it stated in the majority opinion that tradition requires consideration of not only prior convictions but also "evidence of multiple instances of uncharged wrongful conduct." 347 Or at 78. At the same time, the court did not actually explain why uncharged conduct is considered, when it is relevant (except perhaps to suggest that "multiple instances" are required), or how much weight it should be given. Ultimately, the court did not need to grapple with those difficult questions, or with actual application, because there was no evidence of uncharged conduct as to either defendant in *Rodriguez/Buck*. *Id.*

*Rodriguez/Buck* does shed some light on one aspect of uncharged conduct—beyond the bare fact that it must be considered—which is the court's implicit distinction between "wrongful conduct" that falls short of a crime and "wrongful conduct" that constitutes a crime. *Id.* For purposes of the criminal-history factor, the court treated both Rodriguez and Buck as first-time offenders who engaged in a "single occurrence of the wrongful conduct." *Id.* It did so despite having previously mentioned that the *Rodriguez* record evinced "a litany of improper communications and conduct between Rodriguez and the boy," which allowed an inference that Rodriguez had "acted wrongly" toward the victim on multiple occasions, *id.* at 56, and that the *Buck* record contained evidence that Buck had made "comments" to the girl that suggested "inappropriate" sexual interest in her, *id.* at 57. We understand that to mean that, for proportionality purposes, a court should consider only uncharged conduct that appears to have risen to the level of a crime, as distinct from conduct that was "wrongful" in a more colloquial sense.

Returning to the issue of other convictions in the same case, we can discern no logic in requiring consideration of uncharged conduct, *Rodriguez/Buck*, 347 Or at 78, but not allowing consideration of other convictions in the same case. If anything, considering other convictions in the same case seems less problematic, insofar as a jury has actually found the defendant guilty of those offenses. We therefore view other convictions in the same case as subject to the same consideration as uncharged conduct, for purposes of proportionality analysis under Article I, section 16, notwithstanding it not being specifically mentioned in *Rodriguez/Buck* as something that should be considered.

That brings us to the most difficult question, which is *how* uncharged conduct or other convictions in the same case should be considered in a proportionality analysis under Article I, section 16. We do not have the luxury of invoking vague general principles in this case, because the "criminal history" factor is dispositive as to whether the sentence on Count 1 is unconstitutionally disproportionate.

The only guiding principle that we have been able to discern from existing Oregon proportionality case law is that "criminal history," in general, is relevant to *incorrigibility* and *failure to deter*, and more severe sentences may be imposed on defendants who have proven to be incorrigible criminals or who have demonstrated a resistance to deterrence that poses a particular danger to the community. We understand an "incorrigible" criminal to be a habitual offender whose criminal history is so pervasive that a sentencing court may reasonably conclude that the person cannot be effectively deterred from criminal activity, such that the only way to protect the public is to imprison them for as long as possible. *See Webster's Third New Int'l Dictionary* 1145 (unabridged ed 2002) (defining "incorrigible" as "incapable of being corrected or amended," as in "bad beyond the possibility of correction or rehabilitation : utterly bad or depraved <an [incorrigible] criminal>"). Even short of incorrigibility, however, a defendant's criminal history may demonstrate a resistance to deterrence that warrants a longer sentence for the protection of the public. *See Jensen*, 231 Or at 144-45 (where the defendant had prior convictions for

sex crimes, whether his sentence for his most recent sex crime would "shock the moral sense" would "depend upon the seriousness of repetitive sexual conduct of this kind and the danger that it forecasts for others unless the defendant is segregated from society").

The incorrigibility/failure-to-deter rationale has been articulated many times in the case law—indeed, has been almost universally cited—to explain why prior convictions are relevant to the proportionality analysis under Article I, section 16. *See, e.g.*, *Rodriguez/Buck*, 347 Or at 77; *Wheeler*, 343 Or at 673-74; *Smith*, 128 Or at 525; *Lara-Vasquez*, 310 Or App at 109; *Delp*, 297 Or App at 12; *Wiese*, 238 Or App at 429; *Alwinger*, 236 Or App at 247. We have also relied on that rationale with respect to uncharged conduct. In *State v. Baker*, 233 Or App 536, 543, 226 P3d 125, *rev den*, 348 Or 414 (2010), the defendant had engaged in a multi-year sexual relationship with his daughter that began when she was a minor and continued into her adulthood, and we observed that the "[d]efendant's conduct persisted even after the police alerted him that they were investigating the sexual relationship." In *Buckendahl*, 308 Or App at 130, the defendant was a teacher convicted of sexual abuse of a minor student, and we observed that, despite having been professionally disciplined for "inappropriate conduct with young students," including inappropriate touching, the defendant "nonetheless persisted" in that conduct and committed the current offense.

Our 2018 decisions in *Carey-Martin* and *Horseman* are particularly helpful. *Carey-Martin* contains a fairly substantial discussion of the third *Rodriguez/Buck* factor (the defendant's "criminal history") in the context of resolving a dispute between the parties as to "how defendant's multiple victims and multiple convictions should be considered for the purpose of assessing proportionality." 293 Or App at 640. The defendant in *Carey-Martin* had been tried on numerous charges in a single trial "for conduct that occurred over a period of about a year and a half while he was a teenager, some of it while he was underage, and which involved requesting and receiving, by text messaging, nude images of girls who were two to four years younger than he was." *Id.*

at 613. He was convicted of a total of 18 crimes, including 11 crimes based on "sexting." *Id*. at 629. The sentencing court ordered all concurrent sentences, resulting in a total sentence of 25 years in prison. *Id*.; *see* ORS 137.690 (providing for a 25-year prison sentence for persons convicted of more than one major felony sex crime).

The state argued that the defendant qualified as a "repeat offender" and that all of his convictions should be considered in assessing proportionality (and even conduct for which he was found not guilty). *Carey-Martin*, 293 Or App at 640. In short, in the state's view, "[b]ecause defendant did more than victimize a single victim on a single occasion," his 25-year sentences would not shock the moral sense of reasonable people. *Id*. The defendant countered "that a repeat offender for proportionality purposes is an offender who has reoffended after having been previously convicted and served a sentence." *Id*. In his view, cases like *Smith*, *Jensen*, and *Rodriquez/Buck* made clear that the "criminal history" factor was inextricably linked to the state's "constitutionally permissible interest in imposing sentences 'to rid itself of depravity when its efforts to reform have failed.'" *Id*. at 640-41 (quoting *Smith*, 128 Or at 525).

We agreed with the defendant. Although we recognized that his "rampant sexual misconduct [wa]s far from the isolated conduct exhibited by the defendants in *Rodriguez/Buck*," we "[n]evertheless" understood the state's proposed approach to be inconsistent with Article I, section 16, and existing case law. *Id*. at 641. We observed that "central to the Supreme Court's formulation of the criminal history factor in *Rodriguez/Buck* is the state's interest in imposing lengthy sentences to protect the public in light of circumstances when efforts to reform have failed." *Id*. We contrasted the criminal history of the *Althouse* defendant—"30 years of sexual offenses and multiple previous convictions"—against the *Carey-Martin* defendant's conduct "over a relatively shorter period of time" and with "no criminal history or encounters with the police prior to the investigation of th[at] case." *Id*. at 641-42. There was no evidence—in the form of prior sentences that failed to deter, or otherwise—that the defendant was "incorrigible," that

"attempts to reform would fail," or that his conduct reflected a "'deeply ingrained pattern of predatory behavior.'" *Id*. at 642 (quoting *Althouse*, 359 Or at 687).

  *Carey-Martin* is also noteworthy in its emphasis on the text of Article I, section 16, which requires that the punishment be proportionate to "the offense." We therefore rejected the notion—advocated in a dissenting opinion— that the court could look beyond the individual sentence on the individual offense and decide proportionality based on *all* of the defendant's convictions in the proceeding and his resulting total sentence. *Id*. at 643 ("The Supreme Court has never indicated that the proportionality analysis must focus on the propriety of all of the defendant's sentences taken together in one sentencing proceeding, on whether the trial court could have arrived at the same, or greater, 'package' by a different route, or on whether, on remand, it could per- missibly arrive at the same, or greater, 'package.' Rather, Article I, section 16, requires that 'all penalties shall be pro- portioned to the offense,' and, in an as-applied challenge, the Supreme Court has required 'a comparison of the sever- ity of the penalty and the gravity of the crime.' *Rodriguez/ Buck*, 347 Or at 58.").

  Shortly after *Carey-Martin*, we decided *Horseman*. The defendant in *Horseman* "was convicted of 12 sex crimes related to the multiple sexual encounters he had with teen- aged boys when he was in his late 40s." 294 Or App at 400. Five of his convictions were for using a child in a display of sexually explicit conduct, and he received concurrent 300- month prison sentences for four display convictions. *Id.* On appeal, he challenged the 300-month sentences as uncon- stitutionally disproportionate under Article I, section 16. *Id*. We rejected that argument, viewing the first and third *Rodriguez/Buck* factors together as dispositive, even though the second factor might suggest disproportionality "if con- sidered in isolation." *Id*. at 413. We explained, "We find the first and third factors most consequential here, as they cap- ture the grossly exploitive nature of defendant's sexual pur- suit of teenage boys over a period of at least 15 years, which culminated in defendant's decision to repeatedly induce a

particularly vulnerable child to display himself masturbating, in facilitation of additional sexual abuse." *Id*. at 414.

Significantly, the defendant in *Horseman* did not have prior convictions related to his "sexual pursuit of teenage boys." *Id*. We instead relied on evidence of uncharged conduct, specifically uncharged conduct that suggested that the defendant was incorrigible and that efforts at reform would likely fail, explaining that, while *Rodriguez/Buck* requires consideration of uncharged conduct as part of a defendant's criminal history, it is important to keep in mind why we consider criminal history:

> "We must also be mindful, however, that a defendant's criminal history is important not for abstract reasons, but that it matters at least in part because of the state's interest in protecting the public 'when efforts to reform have failed.' *Carey-Martin*, 293 Or App at 641. Thus, we take into account not only the number of previous offenses and uncharged incidents, but whether the record indicates that a defendant 'is incorrigible or that attempts to reform would fail.' *Id*. at 642. In *Carey-Martin*, that factor supported a determination of disproportionality. Although we could not ignore the defendant's convictions for physical sex crimes against his victims (in addition to the sexual-display convictions), the defendant 'was only 16, 17 and 18 when he committed the offenses against other teenagers,' he had never before been involved with the criminal justice system, and there was a 'lack of any unsuccessful attempt at rehabilitation.' *Id*.

> "The circumstances are starkly different here. Defendant was not close in age to his victims; he was more than 30 years older. Defendant had a long history of being accused of sexual predation against young teenaged boys. And defendant had been contacted by police officers at least twice—in 1997 and 2005—about reports that he had engaged in sexual activity with such children. That history amply supports a finding—of the sort that the presentence investigator reached—that defendant had a pattern of 'seek[ing] out vulnerable young male victims.' It also demonstrates that, despite having repeatedly been confronted with accusations that he was illegally engaging in sex with children, defendant persisted in that behavior, culminating in his sexual abuse of T and the five separate episodes in which he induced G to display himself

masturbating and then sexually abused the boy. Finally, after having been prosecuted and convicted for his crimes against T and G at age 50, defendant has indicated that he has no intention of seeking treatment.

"In short, despite never having been previously punished for a sex crime, defendant has had other opportunities to understand and reform his many years of criminal behavior, and he has not done so. The record supports a determination that defendant 'is incorrigible' and that 'attempts to reform would fail.' *Carey-Martin*, 293 Or App at 642. Accordingly, the third *Rodriguez/Buck* factor weighs strongly in favor of a conclusion that the 300-month prison terms are not unconstitutionally disproportionate as applied to the circumstances of this case."

*Id.* at 413-14.

Based on all of the foregoing case law, we understand that a defendant's "criminal history" is predominantly relevant to the proportionality analysis under Article I, section 16, as it pertains to incorrigibility and failure to deter. (To the extent that it may also be relevant in some other way, we have been unable to discern it from existing case law.) That rationale applies equally to prior convictions, other convictions in the same case, and uncharged conduct—even if the latter two categories require a more nuanced approach than simply looking at prior criminal convictions and sentences.

Here, the evidence does not demonstrate that defendant is incorrigible or that attempts at reform are likely to fail. Defendant has not previously been involved with the criminal justice system. There is no evidence of any prior police contact until this case. There have been no attempts at rehabilitation. The only assessment of defendant that is in the record—a psychosexual examination conducted by an expert hired by the defense and put into evidence at defendant's sentencing hearing—suggests that defendant's crimes were opportunistic and that he is susceptible to treatment and reform.

Of course, the fact that defendant repeatedly sexually touched another child, A, over a three- to four-year period is quite significant—and defendant has been convicted and punished for that conduct. For purposes of

sentencing defendant for the offense against M, however, the fact that defendant has not yet served his sentences for the conduct against A and has had no opportunity to reform is also significant. It is also significant that defendant committed a single offense against M, that it occurred during the same time period as the offenses against A, and that the offense against M was less grave than the offenses against A (rather than showing escalation).

With respect to criminal history, defendant is more like the defendant in *Carey-Martin*, who "had no criminal history or encounters with the police prior to the investigation of this case" and whose criminal conduct against multiple victims occurred "over a relatively shorter period of time" of one to two years, *Carey-Martin*, 293 Or App at 613, 642, than he is like the defendant in *Althouse*, who had "30 years of sexual offenses and multiple previous convictions," *id.* at 641, or the defendant in *Horseman*, who, although never criminally punished for a crime, "had a long history of being accused of sexual predation against young teenaged boys," had been contacted by police at least twice, and "had other opportunities to understand and reform his many years of criminal behavior" that he failed to take, *Horseman*, 294 Or App at 413-14. In other words, there is evidence that defendant engaged in a pattern of wrongful conduct over a period of several years, but there is not evidence of a "*deeply ingrained pattern* of predatory behavior." *Althouse*, 359 Or at 687 (emphasis added).

Each case is different, so there are obviously differences between defendant and, say, the *Carey-Martin* defendant. The most significant one is the age difference between defendant and A. In 2016, defendant would have been approximately 28 years old, while M was eight or nine years old, which is very significant. On the other hand, defendant's total lack of prior police contact is more significant here than in *Carey-Martin*, because defendant was 31 years old when arrested, reflecting a much longer crime-free period as an adult than the defendant in *Carey-Martin*, who was 18 years old when arrested. Defendant also had far fewer victims (two) than the defendant in *Carey-Martin* (eight). *Carey-Martin*, 293 Or App at 626. And defendant submitted

to a psychosexual examination in aid of sentencing, which provides at least some information regarding whether he is incorrigible or susceptible to treatment and reform.

In the end, defendant's criminal history is "worse" than some defendants and "better" than others. We do not understand the third *Rodriguez/Buck* factor to be binary. Extensive criminal history may weigh "strongly" in favor of proportionality in some cases, as it did in *Horseman*, 294 Or App at 414, and as it often does in cases involving true recidivist statutes, such as *Smith*, 128 Or at 526. Conversely, a complete lack of criminal history may combine with other factors to establish disproportionality, as noted in *Shaw*, 233 Or App at 439. Criminal history that falls between the two ends of the spectrum must be weighed against the other two *Rodriguez/Buck* factors to reach an ultimate determination whether a sentence is unconstitutionally disproportionate. Here, the criminal-history factor tips toward disproportionately, albeit not heavily.

E.   *Considering the Three Factors Together*

The final step is to consider the three *Rodriguez/Buck* factors together. For the reasons described, the first factor (severity of the penalty compared to gravity of the crime) indicates disproportionality. The second factor (comparative penalties for other, related crimes) is neutral. The third factor (defendant's criminal history) also indicates disproportionality. Considering those three factors together, we conclude that defendant's 75-month prison sentence for giving an eight- or nine-year-old child a single kiss described as a "peck" on the lips violates Article I, section 16.

In concluding otherwise, the trial court appears to have taken the view that, absent the offenses against A, the sentence on Count 1 for the offense against M would be unconstitutionally disproportionate, but that the existence of "two separate victims" and "repeated ongoing conduct" (against A) made it proportionate. Having reviewed the body of existing case law to understand the proper role of criminal history in assessing proportionality, we disagree. A 75-month prison sentence for a single peck on the lips is unconstitutionally disproportionate, and it is not rendered

proportionate by the fact of other convictions against a different victim in the same case, where defendant's criminal history does not establish that he is incorrigible or resistant to reform or deterrence. Of course, defendant's current sentences give him ample opportunity for reform and, should he fail to reform, that information could be highly relevant to future sentences.

## V. CONCLUSION

In sum, we affirm all of defendant's convictions, but we reverse his sentence on Count 1 as unconstitutionally disproportionate and remand for resentencing.

Remanded for resentencing; otherwise affirmed.