724 December 17, 2025 No. 1085

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN PAUL SHORT,
*Defendant-Appellant.*

Linn County Circuit Court
22CR25203; A183848

Keith B. Stein, Judge.

Submitted November 19, 2025.

Bear Wilner-Nugent filed the briefs for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

## JACQUOT, J.

Defendant appeals from a judgment convicting him of two counts of sodomy in the first degree, ORS 163.405, and one count of sexual abuse in the first degree, ORS 163.427.[1] The jury convicted defendant of orally sodomizing the victim (Counts 1 and 2) and of "French kissing" her on a separate occasion (Count 3).[2]

Defendant first assigns error to the trial court's failure to *sua sponte* strike a portion of the recorded forensic interview with the victim, in which she wondered aloud if defendant had possibly abused her younger sister, as well. Defendant's second assignment of error is that the trial court allegedly imposed an unconstitutionally disproportionate sentence on Count 3. On Count 3, the court sentenced defendant to 75 months in prison pursuant to ORS 137.700(2)(a)(Q), to be served consecutively to the 300-month sentence on Counts 1 and 2. We conclude that the trial court's failure to *sua sponte* strike the forensic interview does not constitute plain error. We also conclude that, given the circumstances surrounding defendant's conduct, his sentence on Count 3 is not unconstitutionally disproportionate. Thus, we affirm.

Before August 2019, the victim resided with defendant, her biological mother, and half-siblings. After an Oregon Department of Human Services (ODHS) investigation that led to the removal of defendant's children from his household, the victim's biological father successfully moved to obtain custody of her and brought her into his home.

_____

[1] ORS 163.427 provides, in relevant part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less than 14 years of age; [or]

"(B) The victim is subjected to forcible compulsion by the actor; [or]

"*****

"(b) Intentionally causes a person under 18 years of age to touch or contact the mouth, anus or sex organs of an animal for the purpose of arousing or gratifying the sexual desire of a person.

"(2) Sexual abuse in the first degree is a Class B felony."

[2] The jury acquitted defendant of Count 4, and we do not discuss it here.

After the victim left defendant's household, she reported being mentally, physically, and sexually abused while living with defendant. In May 2021, the victim's older sister discovered several handwritten letters hidden in a drawer. The letters, written by the victim but never sent to anyone, detailed acts of sexual abuse that defendant had inflicted on the victim years earlier.

After the victim's letters were discovered, the victim's biological father and local law enforcement arranged a forensic child abuse interview at ABC House, the child advocacy center for Linn and Benton counties. During the victim's interview, she related details of abuse that were consistent with those given in her letters.

As noted, defendant raises two assignments of error. We address defendant's second assignment of error first. Defendant's second assignment of error is that the trial court imposed an unconstitutionally disproportionate sentence on Count 3. We review the trial court's application of Article I, section 16, of the Oregon Constitution, for errors of law. ORS 138.105(7); *State v. McCombs*, 330 Or App 545, 564, 544 P3d 390, *rev den*, 372 Or 718 (2024). We address proportionality challenges using the factors set out in *State v. Rodriguez/Buck*, 347 Or 46, 58, 217 P3d 659 (2009), which include: "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." In considering these criteria along with the specific facts surrounding the crime, we determine whether the sentence in question "shock[s] the moral sense of all reasonable [people]," which is the ultimate test of proportionality. *Id.* at 57 (quoting *Sustar v. County Court for Marion Co.*, 101 Or 657, 665, 201 P 445 (1921) (internal quotation marks and emphasis omitted)).

Defendant argues that his act of "French kissing" the victim in this case is similar to the "peck on the lips" in *State v. Hernandez-Esteban*, 330 Or App 34, 35, 543 P3d 154 (2024), *aff'd in part and rev'd in part*, 374 Or 300, 577 P3d 761 (2025). Defendant argues there is a "small factual distinction" between his conduct in this case and the conduct in *Hernandez-Esteban*. We disagree.

As the state argues, defendant's conduct here is far more grave than the "peck" on the lips at issue in *Hernandez-Esteban*. In *Hernandez-Esteban*, the defendant was convicted of first-degree sexual abuse for having subjected the victim "to sexual contact by touching her lips or mouth." *Id.* at 39. The victim described the conduct as "a 'peck' on the lips." *Id.* at 42. In contrast, here, defendant asked the victim, who was around eight years old at the time, if she had "ever French kissed anybody." When the victim answered no, defendant grabbed her hair and "stuck his tongue down [her] throat." She testified that defendant "just did it. Not like [she] had a choice." The victim's letter corroborated this testimony. She wrote, in part:

> "His hand was on the back of my head, not letting me pull away. He unwillingly put his tongue down my throat. He not only disrespected my eight-year-old self but also stole my first kiss away from me. He told me not to ever tell anybody and that if I did, there would be severe consequences and that it would be my fault."

Defendant's conduct is like the conduct in *State v. Lara-Vasquez*, 310 Or App 99, 106, 484 P3d 369, *rev den*, 368 Or 561 (2021), because of the similarity in "forceful" conduct. In that case, we affirmed a 75-month sentence for first-degree sexual abuse where the defendant locked a child's bedroom door, physically restrained her arms, grabbed her clothed buttocks, kissed her neck, and told her that he wanted to lay down with her in a sexual way and that she turned him on. *Id.* at 102. Like the conduct in that case, defendant's conduct here involved "physical force (forcible compulsion)." *Id.* at 106. Here, the victim testified that defendant grabbed her hair, did not let her pull away, and stuck his tongue down her throat. Defendant's conduct also is graver than the conduct in *Rodriguez/Buck* because "of the groping nature of the conduct and defendant's unambiguous sexual intent." *Id.* at 107. Defendant's use of force makes his conduct graver than the conduct in *Rodriguez/Buck* and *Hernandez-Esteban*.

Additionally, as in *Lara-Vasquez*, here, "[d]efendant's relationship with the victim and the harm that [the victim] suffered also increased the gravity" of defendant's

offense. 310 Or App at 107. Like the defendant in *Lara-Vasquez*, defendant here was the victim's stepfather, and the victim was living with him at the time of the abuse. As in *Lara-Vasquez*, the victim here was "significantly traumatized by the event," *id.* at 107, as she described in her letter when she wrote "I never thought that it would affect me so much." *See also State v. Sokell*, 273 Or App 654, 657, 362 P3d 251 (2015), *aff'd*, 360 Or 392 (2016) (considering trauma to the victim as relevant to gravity of the offense).

The defendant subjected his eight-year-old stepdaughter to sexual conduct through forcible and intrusive "French kissing." This is not the case where the mandatory sentence by the legislature shocks the moral sense of reasonable people. The trial court did not impose an unconstitutionally disproportionate sentence on Count 3.

Defendant's first assignment of error asserts that the trial court erred by not *sua sponte* striking a portion of the recorded forensic interview with the victim, in which she speculated that defendant had possibly abused her younger sister, as well. In defendant's view, those statements were "other acts" evidence that was not admissible under OEC 404(4) and OEC 403.

Defendant acknowledges that, because he failed to object to this evidence, the relevant question is "whether the trial court plainly erred by not interrupting [the challenged testimony] *sua sponte*." *State v. Lopez-Morales*, 332 Or App 686, 691, 551 P3d 1006, *rev den*, 372 Or 812 (2024); *see* ORAP 5.45(1) (granting us discretion to review "plain" error); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991) (describing factors relevant to whether to exercise our discretion). Whether an alleged error constitutes plain error is a question of law. *State v. Wiltse*, 373 Or 1, 10, 559 P3d 380 (2024).

We decline to exercise our discretion to review this as plain error because defendant participated in the redaction of the interview with the knowledge of the court and had several opportunities to object to it but did not. *See, e.g.*, *State ex rel Juv. Dept. v. S. P.*, 346 Or 592, 606, 215 P3d 847, *aff'd*, 346 Or 592, 215 P3d 847 (2009) ("This court has

determined that it will not exercise its discretion to review an asserted plain error if the party seeking review encouraged commission of the error in question ***."). The invited error doctrine provides that "if an appellant was actively instrumental in bringing about the error, then the appellant cannot be heard to complain, and the case ought not to be reversed because of it." *State v. Ferguson*, 201 Or App 261, 269, 119 P3d 794 (2005), *rev den*, 340 Or 34 (2006) (internal quotation marks omitted). Defense counsel's colloquies with the court demonstrate that defendant was "actively instrumental" in determining what parts of the ABC House interview would be played for the jury. Defendant had notice the state would offer the interview into evidence, he expressed an intent to suggest redactions to that interview, he agreed to redactions with the prosecutor, and he was fully aware of the contents of the redacted interview before it was played for the jury. Even if he didn't invite the error, defendant certainly did not provide the judge an opportunity to correct any problem, and he had several opportunities to do so.

Additionally, the victim's statements were speculative, not alleging any prior specific acts at all.[3] Defendant has identified no Oregon case law holding that statements that do not allege actual conduct and are, at most, expressions of generalized suspicion and concern that defendant might have engaged in similar conduct, qualify as "other acts" evidence under OEC 404(4). Under this circumstance, defendant did not establish that admitting the exhibit was plain error, and we decline to review it as such.

Affirmed.

---

[3] The victim said: "Who knows what he could have done? Who knows if he's doing it as revenge because he knows that I said something?" She also went on to say:

"[M]aybe he did it to her at a younger age ***. Who knows if he did things to me when I was around—I think I was around four when he met me. So who knows if he did things to me when I was younger and I don't remember? Who knows if he's done things to [my sister] and she doesn't remember? What if she does? Who knows if she doesn't?"