300 September 25, 2025 No. 39

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

FRANCISCO JAVIER HERNANDEZ-ESTEBAN,
*Petitioner on Review.*

STATE OF OREGON,
*Petitioner on Review,*

*v.*

FRANCISCO JAVIER HERNANDEZ-ESTEBAN,
*Respondent on Review.*

(CC 19CR60141) (CA A177043)
(SC S070848 (Control), S070847)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 9, 2025.

Sara F. Werboff, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the briefs for Francisco Javier Hernandez-Esteban. Also on the briefs was Ernest G. Lannet, Chief Deputy Defender.

Doug Petrina, Assistant Attorney General, Salem, argued the cause and filed the briefs for State of Oregon. Also on the briefs were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Sarah Laidlaw, Oregon Justice Resource Center, Portland, filed the brief for *amicus curiae* Oregon Justice Resource Center.

_____
* Appeal from Washington County Circuit Court, Ricardo J. Menchaca, Judge. 330 Or App 34, 543 P3d 154 (2024).

JAMES, J.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

**JAMES, J.**

In this criminal case, defendant was charged with several sex abuse crimes involving two victims—A and M, both minors—in a single indictment. Before trial, defendant filed a motion to sever, arguing that he was substantially prejudiced by the joinder of the two sets of charges and asserting that—under ORS 132.560(3)—he was entitled either to the severance of the two sets of charges or to some other relief. The trial court denied that motion, and the case proceeded to trial. A jury convicted defendant on all charges involving A and one count of first-degree sexual abuse, ORS 163.427, involving M. At sentencing, defendant argued that the imposition of a mandatory 75-month Measure 11 sentence to his conviction concerning M would be unconstitutionally disproportionate under Article I, section 16, of the Oregon Constitution, but the court rejected defendant's argument and imposed the 75-month sentence. On appeal, the Court of Appeals affirmed the trial court's denial of defendant's motion to sever but concluded that the imposition of the Measure 11 sentence was unconstitutionally disproportionate. *State v. Hernandez-Esteban*, 330 Or App 34, 543 P3d 154 (2024). The state and defendant cross-petitioned for review, and we allowed review of both issues.

We conclude that the trial court erred in denying defendant's motion to sever. In *State v. Delaney*, 370 Or 554, 556, 522 P3d 855 (2022), we explained that a party seeking severance under ORS 132.560(3) must "identify a case-specific theory of substantial prejudice." On the record presented in this case, we conclude that defendant did articulate a sufficient case-specific theory of substantial prejudice, supported by the record, so as to warrant relief under ORS 132.560(3). As we will explain, when a defendant makes the requisite showing of substantial prejudice, a trial court is required to craft *some* remedy; that is, the trial court in that instance has no discretion to craft no remedy at all—and thereby allow the trial to proceed. And, although the trial court has discretion to decide what remedy to craft, some action that remediates the identified substantial prejudice, sufficient to reduce it to the level of prejudice inherent in the joinder of criminal charges, is required. Here, because the

trial court did not order any remedy following defendant's sufficient showing of substantial prejudice, we conclude that the trial court erred in denying defendant's motion to sever. However, we conclude that such error was harmless as to A. We therefore affirm the trial court's judgment on the counts related to A, but reverse on the single count related to M. In light of that disposition, we need not reach the sentencing issue raised by the state on review.

## I.  BACKGROUND

### A.  *Historical Facts*

We take the historical facts from the record before the trial court at the time of defendant's motion to sever.[1] *See Delaney*, 370 Or at 557 n 1. The victims—A and M—are cousins, and defendant was A's mother's boyfriend. In 2014—when A was approximately 12 years old—defendant moved into A's home. According to the state, shortly after he moved in, defendant would go into A's room at night to touch her vagina and buttocks. A testified that she would wake up when defendant did so and that defendant engaged in that behavior almost nightly for four years. Although A did not initially disclose defendant's activity, she eventually told a family member. That family member encouraged A to tell her mother, but honored A's request to not disclose what was happening. In 2018, A moved out of the home she shared with her mother and defendant and moved in with M's mother. When she moved out, A did not tell her mother about what defendant was doing, but she did tell her mother that she would move back in if defendant was no longer in the home.

In May 2019, M—who was 11 years old at the time—told a school counselor that defendant had kissed her on the lips and touched her leg and butt. She also reported that he made her feel uncomfortable by looking her up and down. Law enforcement began to investigate M's allegations and, when they spoke to M's mother, they learned that A

---

[1] The state argues that we should view the record narrowly and limit our review to "the indictment and the state's recitation of the facts in its [briefing on the motion to sever]." We decline to take that approach, because to do so would ignore the full record before the trial court at the time of the motion. Defendant's motion to sever was not the only motion at issue when the trial court ruled. Instead, that motion was submitted alongside the parties' various pretrial motions, and the trial court conducted a joint hearing.

had moved out of her own mother's house because of defendant. Law enforcement then contacted A, and she made disclosures about what defendant had done to her.

Both girls were then interviewed at CARES NW. During M's interview, she reported that she had been at her cousin's house playing a game of chase or keep away in the kitchen when defendant grabbed her and kissed her on the lips. She also reported that, on a separate occasion, defendant had met her in the hallway when she came out of the bathroom and hugged her from behind. She said this made her feel uncomfortable because she could feel his "private part" "getting up." Aside from her allegations against defendant, M also claimed that her mother's then-husband had abused her by touching her sexually. A, meanwhile, reported that defendant's long-time abuse was near constant. She explained that defendant always touched her over her clothes and, in addition to touching her at night, he would also regularly grab and squeeze her buttocks outside of her clothes. Defendant was interviewed by law enforcement, but he denied any wrongdoing, stating that the girls were making up the allegations.

B.  *Procedural Facts*

The state charged defendant in a single indictment with 12 counts of child sex abuse for his alleged abuses of A and M. At the time of the underlying criminal proceedings, A was 18 years old, and M was 13. Ten of those counts—eight counts of first-degree sexual abuse, ORS 163.427[2] (Counts 3 to 10), and two counts of third-degree sexual abuse, ORS 163.415[3] (Counts 11 and 12)—alleged that defendant had

---

[2]  ORS 163.427 provides, in part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less than 14 years of age."

[3]  ORS 163.415 provides, in part:

"(1) A person commits the crime of sexual abuse in the third degree if:

"(a) The person subjects another person to sexual contact and:

"*****

"(B) The victim is incapable of consent by reason of being under 18 years of age[.]"

touched the vagina of A on several occasions. The remaining two counts alleged that defendant had committed first-degree sexual abuse, ORS 163.427, against M for "touching [M's] lips or mouth" (Count 1) and "touching [M's] buttocks" (Count 2) on separate occasions. In the indictment, the state asserted that it was permitted to charge multiple counts in a single indictment because each count was "a separate act and transaction but [w]as part of crimes that are of the same or similar character [as the other charges] and a common scheme and plan."

Shortly before trial, defendant moved to sever the two charges involving M (Counts 1 and 2) from the ten charges involving A (Counts 3-12). Although defendant conceded that joinder was permissible under ORS 132.560 (1)(b)(A)—because each of the charges was "[o]f the same or similar character" as the others—he asserted that the joinder of the two sets of charges substantially prejudiced his interests in a fair trial because the state's asserted basis for joinder was minimal and the prejudice to defendant would be great. Defendant argued that—at the time of the motion—the state's discovery did not provide any evidence that defendant had some overarching criminal scheme or plan tying the two victims together, ORS 132.460(1)(b)(C), or that a joint trial was in any way necessary to explain the two sets of charges. Accordingly, defendant asserted that the state's interest in joining the two sets of charges did not extend beyond the general interests of promoting trial economy and judicial efficiency.

On the other hand, defendant continued, joinder of the two sets of charges caused him substantial prejudice beyond that inherent to the joinder of unrelated criminal charges. In his motion, defendant asserted that the jury was likely to impermissibly use evidence of the charges concerning A as evidence when evaluating the charges concerning M and vice versa. In doing so, defendant analogized the unfair prejudice occasioned by the joinder to the prejudice and due process concerns embodied in the provisions of the evidence code concerning character evidence. Accordingly, defendant requested that the trial court "conduct a balancing test under the Due Process Clause of the United States

Constitution, as essentially codified at OEC 403," in considering whether the charges should be severed.

In addition to requesting that the court sever the two groups of charges from each other, defendant alternatively requested relief in the form of separate opening statements and closing arguments, to help ameliorate the alleged prejudice:

> "Given the bare minimum necessary for joinder in this case, the cases may be tried together, there is no reason the evidence should be presented—or the arguments for and against culpability—in a manner that would likely lead to evidence for one set of charges to be considered in a case with a different set of charges."

Defendant supplemented his argument with a declaration from a psychologist, Robert Heroy, whom the court found qualified to testify as an expert in issues related to juror behavior and decision-making. In that declaration, as discussed in greater detail below, defendant's expert provided an overview of the scholarly research on the impact of joinder on criminal cases and advanced several theories as to how joinder would substantially prejudice defendant in this case.

Defendant's expert first asserted that, insofar as joinder likely results in an increase in conviction rates, it also was likely to increase the chances of a conviction for this defendant. Indeed, he explained, the results of several studies showed "that joinder, by itself, resulted in a significant increase in conviction rates across all charged crimes" and that the impact "was even more robust in situations where the charges were either the same or similar." Based on that research, defendant's expert posited that joinder would increase the likelihood of conviction for defendant based on the sheer quantity of charges:

> "With the current joined charging instrument, [defendant] will be charged with 12 crimes that will be tried simultaneously as opposed to being tried for two cases: one with two charges and a second with ten charges. *** [J]oinder alone will lead to a greater likelihood of conviction for [defendant] due not to the quality of the charges but their quantity. Additionally, the charges against [defendant], save for

two, are identical (sexual assault in the first degree x10) and the two remaining charges are practically identical to the other ten (sexual assault in the third degree). This will increase the likely impact of the joinder to be more robust than it might otherwise have been."

Defendant's expert next identified certain cognitive limitations in jury decision-making as a potential source of prejudice. Indeed, he explained, a range of studies concerning cognitive load, peripheral processing, and heuristic thinking provide support for the proposition that requiring jurors to make multiple determinations of guilt—especially in the context of child sex abuse—puts "significant stress on the jurors['] cognitive system." Applying those principles here, defendant's expert opined:

"From the discovery that has been reviewed by this writer, it seems likely that to decide on these 12 charges, each alleging a separate and distinct event that is to be considered separately and distinctly from the others, the jury will be presented with multiple testimonies from both alleged victims, multiple law enforcement officers, and multiple social workers and teachers who each have played a role in one, but not always both, of the girls' story. Additionally, while the overlap in social workers, CARES employees, and investigators between the cases of [A] and [M] will reduce the total number of people the jurors have to keep organized, aiding the cognitive load, it will simultaneously exacerbate cognitive load by requiring jurors to navigate the problems associated with source confusion, and having to parse testimony during deliberation, after days of court proceedings, trying to remember when a witness spoke on a topic, was it related to [M], [A], or both."

Evidence accumulation, defendant's expert explained, has an inverse relationship with the perceived strength of defense evidence. In other words, "[a]s evidence accumulates, it has a negative impact on perceived strength of defense evidence and a positive impact on perceived strength of prosecution evidence[,] and the evidence presented for one charge increasingly serves to reinforce evidence in the others as accumulation continues." Where, as here, defendant faced 12 nearly identical charges for acts committed against two victims over a four-year period, the

prejudicial impact of evidence accumulation and confusion would be severe. As defendant's expert explained:

> "Evidence will necessarily accumulate significantly in this case as both [M] and [A] will likely testify and discuss events that are completely unconnected by time, place, and alleged victim (as neither is a witness for the other). Confusion of evidence is also likely due not only to the number of charges but also their similar or identical nature."

Another theory concerned the danger of the jury using evidence of other crimes to fill in evidentiary gaps. Defendant's expert explained that "[j]urors will use evidence of the other charges in a joined trial to fill gaps in evidence when looking for a reason to convict *** because of the creation of the 'bad person' identity and the increased probability of bad people doing bad things." Applying that concept to defendant's case, he explained:

> "The considerations regarding criminal inference are substantially prejudicial to [defendant] in this case. The significant number of crimes alleged will increase the likelihood that [defendant] will be assigned the identity of 'criminal' even though at the time of identity assignment, he will not have been convicted of any of those charges. Additionally, the increased likelihood of representativeness and confirmation bias associated with the creation of a criminal schema will make it more likely that evidence associated with the alleged incident with [M] and the alleged incidents with [A] will support each other when they would be unlikely to be considered at the same time if tried separately."

At the hearing on defendant's motion to sever, defendant's expert addressed in greater detail how joinder would substantially prejudice defendant as to the charges involving M, explaining that "[t]he real difference is going to be in the case for [M], where the amount of evidence is relatively small as compared to for [A]." Based on his review of discovery, defendant's expert opined that, although M's case had a weaker presentation and was more equivocal, it would nevertheless enjoy the benefit of proximity to A's case due, in part, to the higher number of charges associated with A as well as A's more cogent story-telling abilities. That would compound the risk that jurors would determine defendant's

guilt as to the charges involving M not on the evidence presented but, rather, by recourse to such heuristics as the criminal schema. Indeed, he testified:

> "And so while the relatively smaller amount of evidence and the weaker presentation that you'll get for [M] would be bolstered by the higher number of charges, the more cogent story-telling abilities of [A], and so that would then help the—it would kind of work to create that criminal schema of, oh, okay, I can believe, based on what [A] is saying, that rather—sorry—if a juror were to say, based on things I've heard from [A], I believe that it is possible that [defendant] sexually abused her. If it happened here, it then increases the odds [of] what * * * would have happened with [M]."

Defendant's expert further testified about the concept of evidence spillover—a phenomenon in which a jury takes the strength of one case and applies it to another. He then applied that concept to the discovery that he had been provided in defendant's case:

> "And if, after hearing, again, all of the evidence—this will be all of the evidence related to [A] and [M], the juror—a juror decides that there is sufficient evidence to believe that the defendant is guilty—or is guilty of sexually abusing a child, it fundamentally changes the story from—I believe the ones with [M] happened temporally later.

> "So, for the sake of this, we'll say that the juror finds that there is sufficient evidence to believe that [defendant] sexually abused [A]. It changes the story when you get to considerations what happened with [M] from [M] was given a hug by her uncle, to [M] was given a hug by her uncle who abuses—who sexually abuses children. And what do people who sexually abuse children do? They sexually abuse children.

> "And so that's how that fundamentally changes the story and makes it sort of easier then to believe, well, yeah. I mean, she was hugged by a guy that sexually abuses kids. I believe that he would have done that there. It fits with the pattern and it fits with the belief of who I believe the defense—the defendant to be."

Returning to the disparity in the strength of the two sets of charges, defendant's expert then noted that "strong

evidence buoys weak evidence, as opposed to weak evidence diluting strong," such that, if a juror had gaps to fill with M's evidence, that juror could fill the gaps with the evidence concerning A. He further emphasized that jury instructions would not effectively ameliorate the resulting substantial prejudice, because it would be difficult for jurors to let go of the idea that defendant was a sexual abuser when considering the evidence concerning M.

Defense counsel focused largely on that concern in his argument at the hearing on defendant's motion to sever:

> "The—you know, because he—because he's a sexual predator, when he hugged—or because he's a sex offender, because he's—you know, he acts with, I guess, sexual intent towards a different child, that he acts with that same intent sexual intent towards the other child when he hugs her.
>
> "* * * * *
>
> "So, because he did it to one person, he must have done it to the other person, and that's why we're going to find him guilty.
>
> "* * * * *
>
> "So, they will hear evidence of [M's] allegations, but because they've already heard evidence of [A's] allegations, then they'll give it more weight. That's one way of looking at it.
>
> "Essentially, this is either impermissible propensity evidence or if it's not propensity evidence, the State needs to identify what the evidence would be used for regarding [M] in the allegations against [A] or the allegations of [A] against [M].
>
> "But either way, Judge, *we ask that it be identified*, and then Court does a balancing test."

(Emphasis added.)

In response, the state argued that the court should deny defendant's motion to sever because the charges for each victim were properly joined and were otherwise "inextricably linked," in that (1) there was evidentiary overlap in the locations where the alleged abuse had occurred, and (2) A had disclosed only after learning that M had disclosed

what had happened to her. The state also asserted that there was "no danger of juror confusion" because the charges and supporting evidence were simple and distinct.

Following the hearing, the trial court denied defendant's motion without explanation:

"Okay. Thank you. I'm going to deny the motion to sever. And what shall we take up next?"

Defendant then asked for further clarification and particular findings, but the trial court did not elaborate:

"[DEFENSE COUNSEL:] Your Honor, can we go back to the severance? Can we get a ruling on the record as to the due process balancing on the severance?

"[THE COURT:] I'm happy to tell the Court of Appeals that I've done the balancing test and that I've denied it. And if that's not adequate, we'll do it again.

"[DEFENSE COUNSEL:] Okay. Thank you, Your Honor."

The case proceeded to trial, and the jury convicted defendant on all charges involving A and one count of first-degree sexual abuse involving M. At sentencing, the trial court rejected a challenge from defendant that the mandatory 75-month Measure 11 sentence that applied to the conviction as to M was unconstitutionally disproportionate under Article I, section 16, of the Oregon Constitution because the underlying conduct—a kiss on the lips—was innocuous compared to the other conduct criminalized by ORS 163.427.

Defendant appealed, challenging both the trial court's denial of his motion to sever and the constitutionality of his sentence on Count 1. With respect to the severance issue, defendant argued that he had been substantially prejudiced because the joinder of the two sets of charges had deprived him of the protection of evidence rules limiting propensity evidence and otherwise rendered his trial fundamentally unfair in violation of due process. On the sentencing issue, defendant argued that his 75-month sentence for briefly kissing M on the lips was unconstitutionally disproportionate because the underlying harm of his conduct

was less than the typical harm in similar cases, penalties for other crimes criminalizing the same or more serious conduct result in significantly less severe sentences, and his prior criminal history did not demonstrate that he was incorrigible or incapable of reform.

In a published opinion, the Court of Appeals affirmed defendant's convictions, but reversed his Measure 11 sentence for the conduct concerning M, reasoning that that sentence for kissing M on the lips had been unconstitutionally disproportionate. *Hernandez-Esteban*, 330 Or App at 35. In affirming the trial court's denial of defendant's motion to sever, the Court of Appeals concluded—with little discussion—that, "[a]lthough defendant tried to identify a case-specific theory of substantial prejudice in his motion to sever, [the court] agree[s] with the state that he ultimately failed to identify any substantial prejudice that went beyond the prejudice inherent in the joinder of separate charges for similar offenses involving different victims." *Id*. at 37.[4]

The state and defendant then cross-petitioned this court for review, and we allowed review of both petitions. With respect to the state's petition, we allowed review to determine whether the Court of Appeals erred in concluding that defendant's sentence on Count 1 was unconstitutionally disproportionate under Article I, section 16, of the Oregon Constitution. And we allowed review of defendant's petition to determine whether he had established "case-specific prejudice" such that the trial court should have severed the

---

[4] Defendant also challenged a decision by the trial court to admit A's out-of-court statements under the hearsay exception in OEC 803(18a)(b), which provides for admission of out-court-statements concerning certain acts of abuse, if such a statement was made by a "child declarant." According to defendant, that hearsay exception applied only if the victim was a "child declarant" both when they made the statements and when the victim testified at trial. Because A was 18 years old at the time of trial, defendant contended, that hearsay exception did not apply, and the court should have excluded A's out-of-court statements. The Court of Appeals rejected that argument, and we allowed review of that evidentiary issue, in addition to the severance issue.

That evidentiary issue is identical to the issue that we recently decided in *State v. Akins*, 373 Or 476, 478, 568 P3d 174 (2025). In that case, we concluded that the exception in OEC 803(18a)(b) applied so long as the declarant was a child when they made the statements, even if the declarant had become an adult by the time of their trial testimony. Because that decision is dispositive of defendant's hearsay issue in this case, we affirm the Court of Appeals decision on that point without further discussion.

charges involving A from those involving M.[5] We conclude that the trial court erred in denying defendant's motion to sever. However, we further determine that error was harmless as to A. We therefore affirm the trial court's judgment with regards to the counts concerning A, but reverse on the single count concerning M and remand to the trial court for a new trial on that count. In light of that disposition, we do not reach the sentencing issue posed by the state.

## II. ANALYSIS

A. *Background Discussion*

Joinder and severance in criminal cases are two distinct, though related, concepts, both of which are set forth in ORS 132.560. The decision to join charges is usually made, initially and solely, by the state via the charging document, although occasionally the state will move to join two separate charging instruments. As a general matter, charges are not presumptively joined in Oregon. Rather, the presumption is that charges will be tried separately, unless a specific exception applies that would permit joinder: "A charging instrument *must* charge but one offense, and in one form only," unless a statutory exception applies. ORS 132.560(1) (emphasis added).

Because the initial joinder decision is often made unilaterally by the state at charging, once the case enters the adversarial process, the initial question is often whether the charges actually qualified for joinder. A defendant can challenge the propriety of joinder via a motion challenging joinder. That is not synonymous with a motion for severance. Upon a motion challenging joinder, the state bears the burden, under ORS 132.560(1)(b), to establish that one of three statutory exceptions permitting joinder applied to its charging decision:

"(b)  Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:

---

[5] We also allowed review to consider whether the trial court's failure to sever the charges violated defendant's constitutional due process rights. Because we conclude that the trial court erred in denying defendant's motion to sever under ORS 132.560(3), we do not reach defendant's constitutional arguments.

"(A)    Of the same or similar character;

"(B)    Based on the same act or transaction; or

"(C)    Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

If the state cannot meet its burden to show that one of those exceptions applies, then severance is required, as the counts never were properly joined.

However, even where criminal charges are properly joined under a statutory exception, ORS 132.560(3) authorizes a trial court to sever charges—or order other relief—under certain circumstances:

"If it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires."[6]

Accordingly, motions to sever—like defendant's motion in this case—are distinct from motions challenging joinder. A motion to sever begins with the premise that the state has met its burden to establish that one of the exceptions in ORS 132.560(1)(b) applies, but nevertheless asks the court to exercise its discretionary power under ORS 132.560(3) to sever charges that otherwise have been properly joined. The court has that authority once the party moving for severance has met their burden to establish substantial prejudice— that is, "the kind of potential injury or harm that threatens the defendant's interest in a fair trial." *See Delaney*, 370 Or at 564-66 (explaining that two-step process).

Here, defendant did not challenge the propriety of the initial joinder decision but moved only to sever under ORS 132.560(3). Accordingly, the issue before us involves two questions, simply stated: (1) whether the facts stated in the motion, supported by the record, show the existence of substantial prejudice; and, if so, (2) "the appropriate form of relief. " *State v. Miller*, 327 Or 622, 629, 969 P2d 1006 (1998). The first is a question of law, reviewed for errors of law. The

---

[6] ORS 132.560(2) permits a trial court to consolidate cases based on the joinder criteria set out in ORS 132.560(1)(b).

second is a discretionary action by the trial court, reviewed for abuse of discretion. *Delaney*, 370 Or at 563.

B.    *Requirement for Case-Specific Substantial Prejudice*

The joinder of charges always carries some inherent risk of prejudice to the defendant, because increasing the number of charges that a jury must consider may increase the likelihood that it would convict for impermissible character reasons. Therefore, this court held in *Delaney*, 370 Or at 556, that a defendant must establish a "case-specific theory of substantial prejudice" that is more than the prejudice inherent whenever a jury is tasked with deciding whether a defendant may have committed multiple offenses. We based that holding on three principles that we derived from our previous decisions on motions to sever made under ORS 132.560(3):

> "First, claims of prejudice arising from joinder are evaluated on a 'case-by-case' basis to determine whether the defendant has identified the kind of potential injury or harm that threatens the defendant's interest in a fair trial. *Miller*, 327 Or at 627, 629. Second, to establish that the defendant was prejudiced by joinder, the defendant must articulate a case-specific theory of prejudice. [*State v. Thompson*, 328 Or 248, 257, 971 P2d 879 (1999).] And third, the defendant's theory must demonstrate a degree of prejudice beyond the prejudice that is inherent to the joinder of unrelated charges. *Miller*, 327 Or at 634."

*Delaney*, 370 Or at 566.

In *Miller*, the defendant argued that this court should announce a categorical rule that substantial prejudice exists where (1) the accusatory instrument charges multiple unrelated offenses involving violence or sexual assault; (2) the court would admit evidence that would not be admissible if the charges were tried separately; and (3) the defendant chooses not to testify in his defense against each offense. 327 Or at 629. We rejected that categorical rule, explaining that "[c]ourts apply few legal standards that are more case specific than the standard of prejudice." *Id*.

We have since reaffirmed—on several occasions—that a generic theory of prejudice is insufficient to meet the requirements of ORS 132.560(3). *See State v. Taylor*, 364 Or

364, 378, 434 P3d 331 (2019) (rejecting the defendant's argument, because "he identifie[d] no prejudice apart from the generic concern that admitting other-acts evidence creates a danger 'that the jurors will convict a defendant based, not upon the evidence, but upon their perception of the defendant's bad character'"); *State v. Barone*, 329 Or 210, 217, 986 P2d 5 (1999) (rejecting as generic the defendant's argument that "it [was] 'obvious' that joinder of the charges was 'highly inflammatory' and that the 'unfair prejudice of consolidating these cases was so overwhelming as to prevent the fair trial on any of [the] alleged crimes'"); *State v. Thompson*, 328 Or 248, 257, 971 P2d 879 (1999) (rejecting as generic the defendant's argument that, "where the offenses are distinct in time, place and evidence, defendant runs the risk that any adverse effect from one case will influence the jury's consideration of the other case").

That is not to say that the concepts underlying those generalized concerns are not properly considered. That jurors might be induced to convict a defendant based upon perception, not evidence, is a legitimate concern. So, too, is the possibility that cross-admissible evidence might confuse the jury or induce them to render a verdict based on propensity. "Case-specific" substantial prejudice does not require prejudice that is necessarily unique to the case itself. Accordingly, the requirement for a showing of case-specific substantial prejudice is not meant to prohibit any consideration of general concerns; rather, it signifies that those general concerns, *standing alone*, will be insufficient to show substantial prejudice that could affect the fairness of the trial. In other words, consideration of those general concerns should occur within the grounding framework of the specific facts of the case and the evidence at hand.

Grounding the showing of substantial prejudice of joinder to the facts of the case further requires that a defendant's theory of prejudice be fairly presented by the record before the trial court at the time of the motion to sever. For example, in *Miller*, 327 Or 622, the defendant articulated a case-specific theory of substantial prejudice in support of his proposed categorical rule discussed above. Specifically, the defendant argued that "a joint trial infringed his right not

to testify regarding some of the charges against him." *Id*. at 634. In denying the defendant's motion pretrial, the trial court had made a corroborating—albeit qualified—finding that "'defendant may not wish to testify regarding one of the events.'" *Id*. (emphasis omitted). On review, this court also rejected the defendant's argument specifically because the record did not provide sufficient support for his theory:

> "Defendant filed his motion to sever before trial and renewed his motion after the state finished offering evidence about the first of the two incidents. At those points in the proceeding, defendant did not know, or at least did not establish, whether he would testify and, if he did, whether he would offer evidence about the first or second incident, or both. We conclude that defendant was so noncommittal about his desire not to testify that his claim, viewed alone or in conjunction with his other arguments, failed to show that a joint trial would prejudice him."

*Id*. at 634-35.

This court similarly rejected the defendant's case-specific theory of substantial prejudice in *Delaney*, 370 Or at 556, because the record was insufficient to support it. In that case, the defendant had argued before the trial court that he would be substantially prejudiced by testimony about similar uncharged bad acts—specifically, anticipated testimony from one of the victims that she decided to come forward because she had "heard" that the defendant had "done similar things to other women." *Id*. at 576. In response to that argument, the prosecutor told the court that the victim had expressed a number of reasons for coming forward. The defendant did not push for clarification on whether that meant that the state was disavowing the challenged testimony. On review in this court, we rejected defendant's argument not only because the record could be understood in multiple ways, but also in recognition of this court's general practice, in other contexts, of assuming that a trial court resolves preliminary questions in the light most favorable to its legal ruling. *Id*. at 577.

In addition to explaining what theories of prejudice are insufficient to meet the substantial prejudice standard, this court has also provided guidance on what potential

theories of prejudice may be viable. In *Delaney*, we explained that, in enacting the current version of ORS 132.560(3), the legislature intended to adopt the federal framework for joinder and severance of criminal charges. *See id*. at 569-571 (analyzing legislative history of ORS 132.560). This court then outlined three nonexclusive theories of substantial prejudice that had been endorsed by the federal courts in appropriate cases (*i.e.,* where they were properly grounded in the facts and evidence of the case at hand): "(1) that the jury will confuse or cumulate the evidence; (2) that the defendant may be confounded in presenting conflicting defenses; and (3) that the jury will conclude that the defendant is guilty of one crime and therefore guilty of others." *Id*. at 575 (citation omitted).

We also clarified that, under federal case law, a party may be substantially prejudiced by the joinder of charges "even where evidence of the joined charges is 'simple and distinct.'" *Id*. at 573; *see also United States v. Foutz*, 540 F2d 733, 738 n 5 (4th Cir 1976) (explaining that, although "simple and distinct" evidence may mitigate concerns about confusing and cumulative evidence, "[i]t does not address itself to the graver mischief possible where the jury, while limiting its consideration of the evidence to the crime to which it relates, properly finds the defendant guilty of one crime but considers that finding probative of his guilt of another").

In addition, this court has also positively cited federal case law that conceptualizes the substantial prejudice standard, at least in part, by weighing the prejudice to the defendant against the traditional justifications for joinder—namely, efficiency and judicial economy. *See Delaney*, 370 Or at 572 (citing *United States v. Armstrong*, 621 F2d 951, 954 (9th Cir 1980) (explaining that a moving party needs to show that joinder was so manifestly prejudicial that it outweighed the efficiency benefits of joinder)); *see also United States v. Halper*, 590 F2d 422, 428 (2d Cir 1978) ("The trial court must also take into account the implicit, and often conflicting, policies *** [such as] the promotion of the economical and efficient administration of criminal justice by the avoidance of needless multiple trials and the protection of criminal defendants from the unfair prejudice that may be caused by the joining of indictments."); *United States v.*

*Gottfried*, 165 F2d 360, 363 (2d Cir), *cert den*, 333 US 860, 68 S Ct 738 (1948) (explaining that "literal compliance with the [r]ule [governing joinder of offenses] is not necessarily final, in cases where there is danger of confusion or of unfair prejudice from the joinder").

Thus, although joinder and severance are distinct, as previously discussed, the state's proffered reason for seeking joinder may affect both the estimation of the quantum of prejudice and the ultimate determination whether that prejudice rises to the substantial threshold. For example, where the joinder of charges is based solely on the offenses being of "the same or similar character," federal courts and commentators have expressed skepticism about the benefits of joinder when compared with prejudice to the defendant. *See, e.g.*, *Halper*, 590 F2d at 430 ("When all that can be said of two separate offenses is that they are of the 'same or similar character,' the customary justifications for joinder (efficiency and economy) largely disappear. *** At the same time, the risk to the defendant in such circumstances is considerable."); *see also United States v. Jawara*, 474 F3d 565, 575 (9th Cir 2007) ("The 'same or similar character' prong of [the federal joinder rule] is the most amorphous and controversial of the three grounds for joinder. Numerous courts and commentators have questioned the logic and fairness of such a rule."); Charles Alan Wright, *Federal Practice and Procedure* § 143 (3d ed 1999) ("Joinder on this ground poses obvious dangers of prejudice to the defendant. *** [I]t may fairly be asked whether joinder of this kind should ever be allowed. If the offenses arise out of separate and unrelated transactions, there is likely to be little saving in time and money in having a single trial."); Note, *Joint and Single Trials under Rule 8 and 14 of the Federal Rules of Criminal Procedure*, 74 Yale LJ 553, 560 (1965) (recommending "abolition of joinder of similar offenses under Rule 8" given its "lack of utility" and risk of prejudice to the defendant).

Accordingly, joinder based solely on ORS 132.560 (1)(b)(A)—for offenses joined for their "same or similar character"—may carry a higher risk at the outset than joinder for other reasons (or joinder based on that factor combined with other factors). Said another way, joinder for "same of

similar character" purposes may often begin further up the scale, closer at the outset to the threshold of "substantial prejudice" that may require "separate trials of counts or * * * other relief justice requires." ORS 132.560(3).

C.  *Defendant established a case-specific theory of substantial prejudice, supported by the record.*

Turning back to the case at hand, we reiterate the state's proffered reasons for joinder: (1) that the charged offenses involving A and M were of the same or similar character, ORS 132.560(1)(b)(A); and (2) that they constituted parts of a "common scheme or plan," ORS 132.560(1)(b)(C). As explained above, had the state's joinder decision been grounded only in "same or similar character," it would have carried a higher risk of substantial prejudice at the outset; however, that risk is tempered somewhat by the state's additional basis of "common scheme or plan." Nonetheless, as explained next, we conclude that defendant established a sufficient theory of case-specific substantial prejudice, supported by the record, resulting from the state's decision to join the charges in this case.

Defendant's theory of case-specific prejudice was principally grounded in the differences in the nature of the charged conduct involving A and M, the disparities in the quality of proof for the conduct involving A as opposed to that involving M, and the resulting concern that the jury would improperly use the evidence in the charges involving A when considering the charges involving M. Beginning with the nature of the charged conduct: Although the parties do not dispute that defendant was charged with the "same or similar" conduct for both A and M so as to allow joinder, defendant emphasizes that the underlying allegations for the two sets of charges were substantially different. As noted, defendant was charged with ten counts of first-degree sexual abuse (eight as to A, and two as to M), and two counts of third-degree sexual abuse (both as to A). Both crimes require proof that the defendant knowingly subjected the victim to "sexual contact." ORS 163.427; ORS 163.415. For purposes of those criminal statutes, "sexual contact" means "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts

of the actor *for the purpose of arousing or gratifying the sexual desire of either party.*" ORS 163.305(5) (emphasis added). Although the nature of the crimes charged—particularly, the first-degree crimes—were the same, the nature of defendant's alleged conduct as to each victim was markedly different. The charges concerning A alleged that defendant—over a four-year period and on an almost-nightly basis—entered A's room to touch her vagina and buttocks while she was sleeping. By contrast, the charges concerning M alleged that, on one occasion, defendant gave her a "peck" on the lips and, on another occasion, defendant hugged her from behind, during which she felt his penis on her buttocks or back.

As to the quality of the proof, defendant argues that the record before the trial court at the time of the hearing on his motion to sever showed that he was substantially prejudiced from an evidentiary standpoint because the charges concerning M were significantly weaker than those concerning A. That is so, defendant argues, because the nature of the alleged conduct against M was not inherently sexual; the surrounding circumstances did not establish that the conduct was sexual; M was a less cogent witness whose pretrial statements were equivocal and confusing; and defendant had multiple viable defenses to M's allegations that were not available with respect to A's allegations.

The state disagrees with the merits of defendant's theory of prejudice. It asserts, instead, that the only case-specific theory that defendant presented to the trial court consisted of defendant's expert testimony that M would be a less-effective witness than A and that that was insufficient to make a showing of substantial prejudice.[7] As explained below, we disagree with the state.[8]

---

[7] The state relatedly asserts that several aspects of defendant's theory are unpreserved or otherwise unreviewable. Much of that argument is based on the premise that, despite the qualifications of defendant's expert, his testimony about the state's provided discovery was insufficient and defendant's failure to put that discovery "on the record" precludes this court from considering it. We discuss one aspect of preservation later; we otherwise reject the state's argument without further discussion.

[8] We do agree with the state that not all the theories of prejudice that defendant's expert described case-specific substantial prejudice. For example, his general assertion that the likelihood of conviction increases when charges are tried jointly is the sort of general prejudice present in all joint trials involving several charges. *See, e.g.*, *United States v. Randazzo*, 80 F3d 623, 629 (1st Cir 1996)

Although the state is correct that some of defendant's theories of prejudice were not case-specific, contrary to the state's assessment, defendant's theory of case-specific prejudice below involved more than his expert's subjective credibility assessment of M's strength as a witness. Rather, defendant argued to the trial court—based on information in the record at the time—that the counts involving M were weaker because M was a less cogent witness and the alleged conduct toward M had not been inherently sexual. As a result, there was a substantial risk that the jury would use the counts involving A to supply proof of sexual purpose as to the counts involving M, thereby interfering with defendant's efforts to defend against the charges involving M. In other words, defendant offered a case-specific argument that M's allegations were weaker from both an evidentiary perspective and as to the nature of the charged criminal activity. Defendant's arguments were thus neither abstract nor generalized but grounded in the perceived risk that the jury in this case might impermissibly use the evidence of defendant's abuse of A to supply the mental state required on the charges against M.

Defendant's filings emphasized how the evidence relating to the counts concerning A would function as propensity evidence for those involving M. The testimony of defendant's expert was even more explicit, explaining how the jury would likely use the evidence from the A counts to fill gaps in evidence from the M counts, specifically by sexualizing defendant's contact with M. Indeed, defendant's expert testified that the evidence from the charges involving A would inevitably color the jury's interpretation of the evidence from the charges involving M:

> "It changes the story when you get to considerations what happened with [M] from [M] was given a hug by [M's] uncle, to [M] was given a hug by her uncle who * * * sexually abuses children.
>
> "And what do people who sexually abuse children do? They sexually abuse children."[9]

---

(explaining that "[j]ury confusion is a legitimate concern * * * but it cannot be proved by simply noting the number of offenses," because "[t]here is no automatic ban on multiple counts in an indictment").

[9] As we have explained, whether substantial prejudice exists is a question of law, not a question of fact. *Delaney*, 370 Or at 563. Under OEC 702, expert testimony

Defendant's expert further explained how the charges involving M occurred under different circumstances and were weaker from an evidentiary standpoint than those involving A. He also discussed the impact that A's stronger case would have on M's weaker one:

> "[W]e have sort of these two different cases in terms of strength or ability of the person to present themselves, * * * you're looking at, I believe, four years total for [A] of alleged sexual abuse incidents.
>
> "Whereas, I want to say for [M] was just maybe two isolated incidents.
>
> "And so, you know, one of the things that happens too is this is what we call filling the gap or where it—basically strong evidence buoys weak evidence, as opposed to weak evidence diluting strong.
>
> "* * * If a juror says, well, * * * *I've got these gaps in my story of what happened with [M], but there's sufficient evidence with [A] to * * * fill in the gaps*. Oh, right. Why did this happen? Oh, because he's a bad guy or *because he is a person that sexually abuses children*."

(Emphasis added.)

Defendant also argued that he established substantial prejudice because of the impact of joinder on his ability to present a defense. During the hearing, the state acknowledged—based on defendant's other filings before the court at the same time—that it appeared defendant would be arguing that M was mistaken about the nature of the touching, in part based on her CARES NW interview. That argument further supports defendant's assertions of case-specific substantial prejudice that he would experience as a result of the joinder.[10]

---

is permissible "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Our decision today should not be read to suggest that expert testimony is required in joinder or severance litigation—for example, much of the expert testimony about prejudice and the facts and evidence of the case could have equally been presented by the attorney.

[10] Contrary to an argument raised by the state, defendant's argument about his defenses—although addressed in a more cursory manner by his expert's presentation—satisfied the practical requirements of preservation on this record, because both parties and the court were aware of defendant's concerns about his ability to defend against the M charges when the trial court denied defendant's motion. *See State v. Skotland*, 372 Or 319, 329, 549 P3d 534 (2024) ("[T]he winds of preservation

We need not, and do not, decide whether any specific component of defendant's argument, standing alone, would have been sufficient to establish case-specific substantial prejudice. Rather, our task is to consider the record that defendant made, in its entirety. And having considered that record as a whole, we conclude that defendant presented a case-specific theory of prejudice to the trial court and, on the merits, the record supported that theory. Defendant's argument fit comfortably into the theories that we identified in *Delaney*, 370 Or at 575, and clearly articulated how and why the jury would likely base its decision on either emotion or impermissible inferences. To reiterate, the nature of the charged conduct, while possibly sufficiently similar in the nature of the crimes charged to permit joinder, was nonetheless substantially different. Further, the more serious counts against one of the two alleged victims were supported by substantially stronger evidence, which could, in turn, tempt the jury to "fill in the gaps" with respect to the other victim, against whom the state alleged less severe conduct supported by thinner evidence. In sum, when those aspects of the record are considered together, it is not difficult for us to conclude that a juror's consideration of the charges and evidence involving A would so influence their consideration involving M as to threaten defendant's right to a fair trial. We therefore conclude that defendant met the threshold for establishing that he was substantially prejudiced by joinder.

D.   *The Trial Court Erred in Denying Defendant's Motion to Sever*

Having concluded that, as a matter of law, defendant made a sufficient showing of case-specific substantial prejudice, we also conclude that the trial court erred in denying defendant's motion to sever. Although ORS 132.560(3) grants a trial court the discretion to "order an election or separate trials of counts or provide whatever other relief justice requires," when case-specific substantial prejudice has been established, justice requires *some* relief. It is not

can be gauged by looking to the weathervane of trial court surprise: Would the trial court be taken aback to find itself reversed *on this issue, for this reason*?" (Emphasis in original.)); *State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011) ("Particularly in criminal cases, in which there is a premium on considerations of cost and speed, the realities of trial practice may be such that fairly abbreviated short-hand references suffice to put all on notice about the nature of a party's arguments.").

within the permissible bounds of discretion for a trial court to do nothing. Because the trial court, in this case, denied defendant's motion in its entirety—and accordingly, provided no relief in any form – the trial court erred.[11]

### E.  *The Trial Court's Error was Harmless as to the Charged Crimes Against A*

Article VII (Amended), section 3, of the Oregon Constitution requires convictions to be affirmed, notwithstanding an error committed at trial, if there was "little likelihood that the *** error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Here, in light of the record at trial and our previous explanation of the risks of joinder, and with due consideration of the arguments by the state otherwise, we simply cannot conclude that there was little likelihood joining these cases didn't affect, to some degree, the verdict as to M.

We reach a different result, however, as to A. Defendant has argued exclusively that the error in failing to sever these cases created harms as to only the counts alleged to have been committed against M. Defendant has made no argument that the error in severing these cases was harmful to him as to the counts alleged to have been committed against A. Given that framing, we cannot conclude that the trial court's error requires reversal of all parts of defendant's judgment of conviction. We therefore reverse the trial court's judgment respecting the single count of conviction alleging conduct against M and remand only that aspect of the judgment for a new trial. We otherwise affirm the court's judgment.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

---

[11] Although defendant proposed separate opening statements and closing arguments as a potential alternative remedy to severance, the trial court denied defendant's motion *in toto,* and thus provided no relief whatsoever. And although the state points to a jury instruction that the court delivered on separate consideration of evidence, that instruction was discussed by the court after the trial had largely concluded, not as a result of the denial of the pretrial severance motion. We do not read the record to suggest that the trial court employed that instruction as a remedial measure to decrease the prejudice resulting from joinder. Accordingly, the question of whether an alternative remedy short of severing the charges would have been adequate is not properly before this court.