No. 1075          December 17, 2025          617

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICKIE ALLEN MILLER,
*Defendant-Appellant.*

Lane County Circuit Court
19CR15728; A179443

Charles M. Zennaché, Judge.

Submitted July 16, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Brett J. Allin, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Lauren P. Robertson, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

After a bench trial, defendant was convicted of two offenses committed against R—first-degree rape (Count 1) and attempted first-degree sodomy (Count 4)—and one offense committed against E—first-degree sodomy (Count 5). On appeal, defendant challenges his convictions for first-degree rape and attempted first-degree sodomy against R on the ground that the state failed to adduce sufficient evidence to allow a factfinder to conclude that he committed those crimes by means of forcible compulsion, and he argues that, consequently, he was entitled to a judgment of acquittal on those counts. He also challenges the trial court's denial of his motion to sever the charges that pertained to different victims. We conclude that the record contains legally sufficient evidence of forcible compulsion, and that defendant did not carry his burden of showing, on the motion to sever, that joint trial of the charges involving separate victims would cause him to suffer substantial prejudice that was specific to this case. Accordingly, we affirm.[1]

## SUFFICIENCY OF THE EVIDENCE OF FORCIBLE COMPULSION

We first address defendant's first and second assignments of error, in which he contends that the trial court erred by denying his motions for judgment of acquittal on Counts 1 and 4. We review the denial of a motion for judgment of acquittal by examining whether, viewing the evidence in the light most favorable to the state, a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998).

Defendant's challenge focuses on whether there was legally sufficient evidence of forcible compulsion. Forcible compulsion, as relevant here, is physical force or the threat of physical force sufficient to compel a person. ORS 163.305(2)

---

[1] In his opening brief, defendant raised an additional assignment of error based on the trial court mistakenly entering a conviction for first-degree sodomy rather than *attempted* first-degree sodomy on Count 4. Defendant has since notified us that that assignment of error is moot because the trial court entered a corrected judgment that correctly identifying the conviction. We agree that the issue is moot and therefore do not address defendant's third assignment of error.

(defining forcible compulsion as "to compel by * * * [p]hysical force" or by "[a] threat, express or implied, that places a person in fear of immediate or future death or physical injury to self"). For the *attempted* first-degree sodomy count, "the state was required to prove only that defendant took a 'substantial step' towards forcibly compelling [the victim] to engage in sexual contact." *State v. Fox*, 262 Or App 473, 478, 324 P3d 608, *rev den*, 356 Or 163 (2014). A defendant takes a "'substantial step' towards the commission of a charged offense" when the defendant's conduct is shown to "'(1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose.'" *Id*. (quoting *State v. Walters*, 311 Or 80, 85, 804 P2d 1164, *cert den*, 501 US 1209 (1991)). We conclude that there was sufficient evidence of forcible compulsion on Count 1 and of at least a "substantial step" towards forcible compulsion on Count 4.

The record contains evidence that, at the time defendant first encountered R on a cold, rainy, December day at about noon, she was sleeping on the sidewalk on top of a metal grate. R thought she might freeze to death. She had been released from the hospital earlier that day and was having severe abdominal pain and other issues related to an ulcer, and she had to use a walker. She was unhoused, and although she had a bed at a shelter, people staying at that shelter were required to leave during the day.

Defendant drove up in a white van and invited R to get in so she could get warm. R got into the van and defendant put her walker in. She expected him to stay there or move the van to park nearby. Instead, he drove her to a more isolated location where he sexually assaulted her.

R was obviously in pain, weak, and ill. In the rear portion of the van, the seats had been removed and there was a "makeshift bed." R lay down there. At the time, she required the use of a walker, couldn't sit up in the van, was too weak to pull the door handle, and could not stay awake during the drive.

R fell asleep during the drive, and when she woke up, defendant was on his knees masturbating above her. Defendant tried to put his penis in her mouth, and she said

"please don't" and "no" and told him that she was sick. She turned her head from side to side to prevent defendant from putting his penis in her mouth. Nevertheless, he did at one point place his penis against her lips.

Despite her efforts to resist, defendant continued the sexual assault. R tried to fight him off when he began to remove her pants, but she was unsuccessful. Defendant began to rape her and slid his hand up so that it was around her throat, which caused her to "freeze." He kept his hand there for what "seemed like a long time." She testified that, at one point, she had difficulty breathing when his hand was there.

After the assault, R went to the hospital, where a nurse trained to conduct sexual assault examinations examined her and gathered evidence from her body. The nurse testified that R had a twenty-millimeter tear of the posterior fourchette—the area below the vaginal opening before the perineum—which, she explained, can be caused by forced penetration.

All of that evidence, viewed in the light most favorable to the state, permits a rational trier of fact to find that, as to the rape charge, defendant used or threatened to use force to compel R to submit or to engage in sex against her will; and as to the attempted sodomy charge, the evidence was sufficient for a factfinder to find that defendant took a "substantial step" towards forcibly compelling R to engage in oral sex. The trial court did not err by denying defendant's motion for judgment of acquittal for Count 1 and partially denying the motion as to Count 4.

DENIAL OF DEFENDANT'S MOTION TO SEVER

We turn to the denial of defendant's motion to sever the charges that pertained to different victims. On review of the denial of a motion to sever, we determine, "as a matter of law, whether the defendant suffered substantial prejudice because of joinder." *State v. Delaney*, 370 Or 554, 575, 522 P3d 855 (2022). Further, we review for "abuse of discretion any relief that the trial court provided or declined to provide to address the substantial prejudice." *Id*. We conduct our analysis based on the evidence that was in the record at the

time that the trial court ruled on the motion to sever. *State v. Hernandez-Esteban*, 374 Or 300, 303, 577 P3d 761 (2025). To that end, we briefly summarize the facts pertaining to the conviction committed against the other victim, E.

E, who was unhoused, was unable to stay at a shelter the night of the sexual assault, and was outside on a cold, wet, February night—a couple of months after the events involving R. A white van pulled up, and the driver, defendant, invited E to get in and warm up. E initially declined, but then eventually got in the van. Defendant agreed to park nearby, but then drove away to a second location. Once there, defendant anally penetrated E and, while doing so, grabbed E by the throat, causing E to black out. After the assault, E underwent a sexual assault examination and had physical evidence collected.

Police initially had descriptions of the attacker and of his vehicle, in both R's and E's cases, but no suspect. DNA collected from E's body, however, matched DNA collected from R's body. The two cases, and investigations, were linked. Once a suspect emerged based on certain details and a partial license plate number, defendant's DNA sample was eventually obtained and compared to the profiles obtained in R's and E's cases. His DNA matched those profiles.

Defendant does not dispute on appeal that the cases were properly joined on the basis that the charging instrument implicitly alleged that the charges were of the same or similar character. ORS 132.560(1)(b)(A); *see also State v. Taylor*, 364 Or 364, 375, 434 P3d 331, *cert den*, 140 S Ct 505 (2019) (holding that a charging instrument need not expressly allege the basis for joinder as such; it is sufficient if it "alleges facts that allow the defendant to understand the state's basis for joining the offenses and allow[s] the court to determine" if that basis for joinder is proper). The trial court also ruled that the charges were properly joined because they were part of a common scheme or plan, as the indictment expressly alleged. ORS 132.560(1)(b)(C).

Defendant argues on appeal that the charges were not properly joined as part of a common scheme or plan, and therefore, he argues, we should analyze the denial of the

motion to sever as if the only basis for joinder had been that the charges were of the same or similar character. But he has not assigned error to the ruling joining the charges on that basis, and to the extent that he challenges joinder on that basis, we reject his arguments. *See Hernandez-Esteban,* 374 Or at 313-14 (noting that motion challenging joinder and motion to sever are distinct).

"A motion to sever begins with the premise that the state has met its burden to establish that [at least] one of the exceptions in ORS 132.560(1)(b) applies," and requests that the court exercise its discretion "under ORS 132.560(3) to sever charges that otherwise have been properly joined." *Hernandez-Esteban*, 374 Or at 314. The party moving for severance has the burden to establish substantial prejudice, which is "the kind of potential injury or harm that threatens the defendant's interest in a fair trial." *Delaney*, 370 Or at 564-66. "[T]he issue before us involves two questions, simply stated: (1) whether the facts stated in the motion [to sever], supported by the record, show the existence of substantial prejudice; and, if so, (2) the appropriate form of relief." *Hernandez-Esteban*, 374 Or at 314 (internal quotation marks omitted).

To prevail on a motion to sever, claims of substantial prejudice from joinder must be case-specific, the identified risk of harm must be one "that threatens the defendant's interest in a fair trial," and the theory of prejudice must exceed "the prejudice that is inherent to the joinder of unrelated charges." *Delaney*, 370 Or at 566.

Here, as was the case in *Hernandez-Esteban*, the established bases for joinder were both that the offenses were of the same or similar character and that they were connected together or constituted parts of a common scheme or plan. 374 Or at 320. "[H]ad the state's joinder decision been grounded only in 'same or similar character,' it would have carried a higher risk of substantial prejudice at the outset; however, that risk is tempered somewhat by the state's additional basis of 'common scheme or plan.'" *Id.* Charges are "connected together or constitute[e] parts of a common scheme or plan" when the joined charges are "logically related" and there is substantial overlapping proof between

them. *State v. Strouse*, 276 Or App 392, 400-01, 366 P3d 1185 (2016).

The trial court concluded that defendant had not established a risk of prejudice of sufficient magnitude that it would threaten defendant's interest in a fair trial. The court determined that, because the investigations were intertwined and logically connected, there would be a substantial amount of overlap in the evidence. The court also determined, however, that jurors would be able to consider the counts separately. The court agreed with defendant that there was potential for some jury confusion, but it decided that the potential confusion could be overcome by providing jury instructions, which it expressed that it was "happy to do."

On appeal, defendant contends that the court erred in that reasoning. As we will explain, we conclude that defendant has not established a risk of prejudice that is not inherent in the joinder of any charges—particularly when the theory of joinder is based on a common scheme or plan. *See Delaney*, 370 Or at 568 (describing as "not case-specific" the defendant's argument in *State v. Barone*, 329 Or 210, 217, 986 P2d 5 (1999), "that it was 'obvious' that joinder of charges for separate murders was 'highly inflammatory' and allowed the state to make the defendant look guilty because of other murders, rather than being 'required to prove each case on its merits'").

Defendant argues on appeal that each case "contained a substantial but distinct weakness," and that, "[w]ith the cases consolidated, those weaknesses largely evaporated, because there was a substantial risk that the factfinder would engage in propensity and other improper reasoning" and "transfer" evidence from one case to the other. That theory relies in part on defendant's argument that the evidence of forcible compulsion on the charges involving R was weak or nonexistent. But we have rejected that argument as to the sufficiency of the evidence, and we further conclude that the evidence of forcible compulsion was not so weak that it would be likely that the factfinder would "transfer" evidence from E's case to its consideration of whether defendant used forcible compulsion against R.

And that possibility would have been addressed by the trial court's offer to provide instructions concerning how the jury could use the evidence in relation to the separate counts.

Defendant argues that trying the cases together would also prejudice his defense because there was evidence that E "had previously engaged in prostitution," which he argues would bolster his theory of defense that the sexual contact had been consensual as an act that E had agreed to do for payment. Defendant asserts that E's credibility was "called into grave doubt" by that evidence. But that argument ignores that OEC 412 prohibits introducing evidence of a complainant's prior sexual conduct, and defendant subsequently stipulated that *prior* acts of prostitution would not be admissible. Defendant was free to argue as to E that the act at issue was a consensual act of prostitution, but he was limited to arguing about the particular act that formed the basis for the charge involving E. Given those circumstances, defendant's defense was not substantially undercut by trying the charges relating to E together with the charges relating to R.

We agree with the trial court that the evidence explaining how each case was investigated and how defendant came to be connected to the case as a suspect would involve much of the same evidence. Further, when it ruled on the motion, the court said it would be willing to give a jury instruction to clarify how a jury should consider the evidence to ensure that the jury would consider the counts separately.[2] Defendant did not establish that there was case-specific substantial prejudice beyond what the trial court was prepared to address with jury instructions, such that severance of the charges was required.

The trial court did not err by denying the motion to sever.

We affirm the judgment of the trial court.

Affirmed.

---

[2] As noted earlier, ultimately, defendant waived the right to a jury trial and the case was tried to the court.